# NICHOLS *v.* UNITED STATES

No. 92–8556.   Argued January 10, 1994—Decided June 6, 1994

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CON-NOR, SCALIA, KENNEDY, and THOMAS, JJ., joined. SOUTER, J., filed an opinion concurring in the judgment, *post*, p. 749. BLACKMUN, J., filed a dissenting opinion, in which STEVENS and GINSBURG, JJ., joined, *post*, p. 754. GINSBURG, J., filed a dissenting opinion, *post*, p. 765.

*William B. Mitchell Carter*, by appointment of the Court, 510 U. S. 942, argued the cause for petitioner. With him on the briefs was *Mary Julia Foreman.*

*Deputy Solicitor General Bryson* argued the cause for the United States. With him on the brief were *Solicitor General Days, Assistant Attorney General Harris, Michael R. Dreeben*, and *Thomas E. Booth.*\*

---

\**Susan N. Herman* and *Steven R. Shapiro* filed a brief for the American Civil Liberties Union as *amicus curiae* urging reversal.

*Kent S. Scheidegger* and *Charles L. Hobson* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging affirmance.

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In this case, we return to the issue that splintered the Court in *Baldasar* v. *Illinois*, 446 U. S. 222 (1980): Whether the Constitution prohibits a sentencing court from considering a defendant's previous uncounseled misdemeanor conviction in sentencing him for a subsequent offense.

In 1990, petitioner Nichols pleaded guilty to conspiracy to possess cocaine with intent to distribute, in violation of 21 U. S. C. § 846. Pursuant to the United States Sentencing Commission's Guidelines (Sentencing Guidelines), petitioner was assessed three criminal history points for a 1983 federal felony drug conviction. An additional criminal history point was assessed for petitioner's 1983 state misdemeanor conviction for driving under the influence (DUI), for which petitioner was fined $250 but was not incarcerated.[1] This additional criminal history point increased petitioner's Criminal History Category from Category II to Category III.[2] As a result, petitioner's sentencing range under the Sentencing Guidelines increased from 168–210 months (under Criminal History Category II) to 188–235 months (under Category III).[3]

---

[1] At the time of his conviction, petitioner faced a maximum punishment of one year imprisonment and a $1,000 fine. Georgia law provided that a person convicted of driving under the influence of alcohol "shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by imprisonment for not less than ten days nor more than one year, or by a fine of not less than $100.00 nor more than $1,000.00, or by both such fine and imprisonment." Ga. Code Ann. § 40.6–391(c) (1982).

[2] There are six criminal history categories under the Sentencing Guidelines. United States Sentencing Commission, Guidelines Manual (USSG) ch. 5, pt. A (Nov. 1993) (Sentencing Table). A defendant's criminal history category is determined by the number of his criminal history points, which in turn is based on his prior criminal record. *Id.*, ch. 4, p. A.

[3] The Sentencing Table provides a matrix of sentencing ranges. On the vertical axis of the matrix is the defendant's offense level representing the seriousness of the crime; on the horizontal axis is the defendant's criminal history category. The sentencing range is determined by identifying the

Petitioner objected to the inclusion of his DUI misdemeanor conviction in his criminal history score because he was not represented by counsel at that proceeding. He maintained that consideration of that uncounseled misdemeanor conviction in establishing his sentence would violate the Sixth Amendment as construed in *Baldasar, supra.* The United States District Court for the Eastern District of Tennessee found that petitioner's misdemeanor conviction was uncounseled and that, based on the record before it, petitioner had not waived his right to counsel.[4] 763 F. Supp. 277 (1991). But the District Court rejected petitioner's *Baldasar* argument, explaining that in the absence of a majority opinion, *Baldasar* "stands only for the proposition that a prior uncounseled misdemeanor conviction may not be used to create a felony with a prison term." 763 F. Supp., at 279. Because petitioner's offense was already defined as a felony, the District Court ruled that *Baldasar* was inapplicable to the facts of this case; thus, petitioner's constitutional rights were not violated by using his 1983 DUI conviction to enhance his sentence.[5] It sentenced petitioner to the maximum term allowed by the Sentencing Guidelines under its interpretation of *Baldasar*, a term 25 months longer than if the misdemeanor conviction had not been considered in calculating petitioner's criminal history score.

---

intersection of the defendant's offense level and his criminal history category. *Id.*, ch. 5, pt. A (Sentencing Table).

[4] The Government contends that, even if *Baldasar* v. *Illinois*, 446 U. S. 222 (1980), prohibits using the prior uncounseled misdemeanor conviction to enhance petitioner's sentence, the District Court applied the wrong legal standard in finding no valid waiver of the right to counsel. Based on *Johnson* v. *Zerbst*, 304 U. S. 458, 467–469 (1938), and *Parke* v. *Raley*, 506 U. S. 20, 28–29 (1992), the Government argues that petitioner failed to carry his burden to establish the absence of a valid waiver of counsel. We need not address this contention due to our resolution of the *Baldasar* issue.

[5] Petitioner's instant felony conviction was punishable under statute by not less than 10 years' imprisonment and not more than life imprisonment. See 21 U. S. C. § 841(b)(1)(B); 979 F. 2d 402, 413–414, 417–418 (CA6 1992).

A divided panel of the Court of Appeals for the Sixth Circuit affirmed. 979 F. 2d 402 (1992). After reviewing the fractured decision in *Baldasar* and the opinions from other Courts of Appeals that had considered the issue, the court held that *Baldasar* limits the collateral use at sentencing of a prior uncounseled misdemeanor conviction only when the effect of such consideration is to convert a misdemeanor into a felony.[6] The dissent, while recognizing that "numerous courts have questioned whether *[Baldasar]* expresses *any* single holding, and, accordingly, have largely limited *Baldasar* to its facts," nevertheless concluded that *Baldasar* proscribed the use of petitioner's prior uncounseled DUI conviction to enhance his sentence under the Sentencing Guidelines. 979 F. 2d, at 407–408 (citations omitted).

We granted certiorari, 509 U. S. 953 (1993), to address this important question of Sixth Amendment law, and to thereby resolve a conflict among state courts[7] as well as Federal Courts of Appeals.[8] We now affirm.

---

[6] The court also stated that its decision was "logically compelled" by *Charles* v. *Foltz*, 741 F. 2d 834, 837 (CA6 1984), cert. denied, 469 U. S. 1193 (1985), 979 F. 2d, at 415–416, 418 ("'[E]vidence of prior uncounselled misdemeanor convictions for which imprisonment was not imposed . . . may be used for impeachment purposes'").

[7] Cf. *Lovell* v. *State*, 283 Ark. 425, 428, 678 S. W. 2d 318, 320 (1984) (*Baldasar* bars any prior uncounseled misdemeanor conviction from enhancing a term of imprisonment following a second conviction); *State* v. *Vares*, 71 Haw. 617, 620, 801 P. 2d 555, 557 (1990) (same); *State* v. *Laurick*, 120 N. J. 1, 16, 575 A. 2d 1340, 1347 (*Baldasar* bars an enhanced penalty only when it is greater than that authorized in the absence of the prior offense or converts a misdemeanor into a felony), cert. denied, 498 U. S. 967 (1990); *Hlad* v. *State*, 565 So. 2d 762, 764–766 (Fla. App. 1990) (following the approach of JUSTICE BLACKMUN, thereby limiting enhancement to situations where the prior uncounseled misdemeanor was punishable by six months' imprisonment or less), aff'd, 585 So. 2d 928, 930 (Fla. 1991); *Sheffield* v. *Pass Christian*, 556 So. 2d 1052, 1053 (Miss. 1990) (*Baldasar* establishes no barrier to the collateral use of valid, uncounseled misdemeanor convictions).

[8] The Sixth Circuit expressly joined the Fifth and Second Circuits in essentially limiting *Baldasar* to its facts. See *Wilson* v. *Estelle*, 625 F. 2d 1158, 1159, and n. 1 (CA5 1980) (a prior uncounseled misdemeanor convic-

In *Scott* v. *Illinois*, 440 U. S. 367 (1979), we held that where no sentence of imprisonment was imposed, a defendant charged with a misdemeanor had no constitutional right to counsel.[9]   Our decision in *Scott* was dictated by *Argersinger* v. *Hamlin*, 407 U. S. 25 (1972), but we stated that "[e]ven were the matter *res nova*, we believe that the central premise of *Argersinger*—that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel."  *Scott, supra*, at 373.

One year later, in *Baldasar* v. *Illinois*, 446 U. S. 222 (1980), a majority of the Court held that a prior uncounseled misdemeanor conviction, constitutional under *Scott*, could nevertheless *not* be collaterally used to convert a second misdemeanor conviction into a felony under the applicable Illinois sentencing enhancement statute.  The *per curiam* opinion in *Baldasar* provided no rationale for the result; instead, it referred to the "reasons stated in the concurring opinions."

tion cannot be used under a sentence enhancement statute to convert a subsequent misdemeanor into a felony with a prison term), cert. denied, 451 U. S. 912 (1981); *United States* v. *Castro-Vega*, 945 F. 2d 496, 500 (CA2 1991) (*Baldasar* does not apply where "the court used an uncounseled misdemeanor conviction to determine the appropriate criminal history category for a crime that was already a felony"), cert. denied *sub nom. Cintron-Rodriguez* v. *United States*, 507 U. S. 908 (1992).  But see, *e. g., United States* v. *Brady*, 928 F. 2d 844, 854 (CA9 1991) (*Baldasar* and the Sixth Amendment bar any imprisonment in a subsequent case imposed because of an uncounseled conviction in which the right to counsel was not waived).

[9] In felony cases, in contrast to misdemeanor charges, the Constitution requires that an indigent defendant be offered appointed counsel unless that right is intelligently and competently waived.  *Gideon* v. *Wainwright*, 372 U. S. 335 (1963).  We have held that convictions gained in violation of *Gideon* cannot be used "either to support guilt or enhance punishment for another offense," *Burgett* v. *Texas*, 389 U. S. 109, 115 (1967), and that a subsequent sentence that was based in part on a prior invalid conviction must be set aside, *United States* v. *Tucker*, 404 U. S. 443, 447–449 (1972).

446 U. S., at 224. There were three different opinions supporting the result. Justice Stewart, who was joined by JUSTICES Brennan and STEVENS, stated simply that the defendant "was sentenced to an increased term of imprisonment *only* because he had been convicted in a previous prosecution in which he had *not* had the assistance of appointed counsel in his defense," and that "this prison sentence violated the constitutional rule of *Scott* . . . ." *Ibid.* Justice Marshall, who was also joined by JUSTICES Brennan and STEVENS, rested his opinion on the proposition that an uncounseled misdemeanor conviction is "not sufficiently reliable" to support imprisonment under *Argersinger,* and that it "does not become more reliable merely because the accused has been validly convicted of a subsequent offense." 446 U. S., at 227–228. JUSTICE BLACKMUN, who provided the fifth vote, advanced the same rationale expressed in his dissent in *Scott*—that the Constitution requires appointment of counsel for an indigent defendant whenever he is charged with a "nonpetty" offense (an offense punishable by more than six months' imprisonment) or when the defendant is actually sentenced to imprisonment. 446 U. S., at 229–230. Under this rationale, Baldasar's prior misdemeanor conviction was invalid and could not be used for enhancement purposes because the initial misdemeanor was punishable by a prison term of more than six months.

Justice Powell authored the dissent, in which the remaining three Members of the Court joined. The dissent criticized the majority's holding as one that "undermines the rationale of *Scott* and *Argersinger* and leaves no coherent rationale in its place." *Id.,* at 231. The dissent opined that the majority's result misapprehended the nature of enhancement statutes that "do not alter or enlarge a prior sentence," ignored the significance of the constitutional validity of the first conviction under *Scott,* and created a "hybrid" conviction, good for the punishment actually imposed but not available for sentence enhancement in a later prosecution.

446 U. S., at 232–233. Finally—and quite presciently—the dissent predicted that the Court's decision would create confusion in the lower courts. *Id.*, at 234.

In *Marks* v. *United States,* 430 U. S. 188 (1977), we stated that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" *Id.*, at 193, quoting *Gregg* v. *Georgia,* 428 U. S. 153, 169, n. 15 (1976). This test is more easily stated than applied to the various opinions supporting the result in *Baldasar.* A number of Courts of Appeals have decided that there is no lowest common denominator or "narrowest grounds" that represents the Court's holding. See, *e. g., United States* v. *Castro-Vega,* 945 F. 2d 496, 499–500 (CA2 1991); *United States* v. *Eckford,* 910 F. 2d 216, 219, n. 8 (CA5 1990); *Schindler* v. *Clerk of Circuit Court,* 715 F. 2d 341, 345 (CA7 1983), cert. denied, 465 U. S. 1068 (1984). Another Court of Appeals has concluded that the holding in *Baldasar* is JUSTICE BLACKMUN's rationale, *Santillanes* v. *United States Parole Comm'n,* 754 F. 2d 887, 889 (CA10 1985); yet another has concluded that the "consensus" of the *Baldasar* concurrences is roughly that expressed by Justice Marshall's concurring opinion. *United States* v. *Williams,* 891 F. 2d 212, 214 (CA9 1989). State courts have similarly divided.[10] The Sentencing Guidelines have also reflected uncertainty over *Baldasar.*[11] We think it not useful

---

[10] See n. 7, *supra.*

[11] The 1989 version of the Sentencing Guidelines stated that, in determining a defendant's criminal history score, an uncounseled misdemeanor conviction should be excluded only if it "would result in the imposition of a sentence of imprisonment under circumstances that would violate the United States Constitution." USSG §4A1.2, Application Note 6 (Nov. 1989). Effective November 1, 1990, the Sentencing Commission amended §4A1.2 by deleting the above quoted phrase and adding the following statement as background commentary: "Prior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncoun-

to pursue the *Marks* inquiry to the utmost logical possibility when it has so obviously baffled and divided the lower courts that have considered it. This degree of confusion following a splintered decision such as *Baldasar* is itself a reason for reexamining that decision. *Payne* v. *Tennessee*, 501 U. S. 808, 829–830 (1991); *Miller* v. *California*, 413 U. S. 15, 24–25 (1973).

Five Members of the Court in *Baldasar*—the four dissenters and Justice Stewart—expressed continued adherence to *Scott* v. *Illinois*, 440 U. S. 367 (1979). There the defendant was convicted of shoplifting under a criminal statute which provided that the penalty for the offense should be a fine of not more than $500, a term of not more than one year in jail, or both. The defendant was in fact fined $50, but he contended that since imprisonment for the offense was authorized by statute, the Sixth and Fourteenth Amendments to the United States Constitution required Illinois to provide trial counsel. We rejected that contention, holding that so long as no imprisonment was actually imposed, the Sixth Amendment right to counsel did not obtain. *Id.*, at 373–374. We reasoned that the Court, in a number of decisions, had already expanded the language of the Sixth Amendment well beyond its obvious meaning, and that the line should be drawn between criminal proceedings that resulted in imprisonment, and those that did not. *Id.*, at 372.

We adhere to that holding today, but agree with the dissent in *Baldasar* that a logical consequence of the holding is that an uncounseled conviction valid under *Scott* may be re-

---

seled misdemeanor sentences where imprisonment was not imposed." USSG App. C, amdt. 353 (Nov. 1993). When the Sentencing Commission initially published the amendment for notice and comment, it included the following explanation: "The Commission does not believe the inclusion of sentences resulting from constitutionally valid, uncounseled misdemeanor convictions in the criminal history score is foreclosed by Baldasar v. Illinois, 446 U. S. 222 (1980)." 55 Fed. Reg. 5741 (1990).

lied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment. Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes that are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction. As pointed out in the dissenting opinion in *Baldasar*, "[t]his Court consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant. *E. g., Moore* v. *Missouri,* 159 U. S. 673, 677 (1895); *Oyler* v. *Boles,* 368 U. S. 448, 451 (1962)." 446 U. S., at 232.

Reliance on such a conviction is also consistent with the traditional understanding of the sentencing process, which we have often recognized as less exacting than the process of establishing guilt. As a general proposition, a sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States* v. *Tucker,* 404 U. S. 443, 446 (1972). "Traditionally, sentencing judges have considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant." *Wisconsin* v. *Mitchell,* 508 U. S. 476, 485 (1993). One such important factor, as recognized by state recidivism statutes and the criminal history component of the Sentencing Guidelines, is a defendant's prior convictions. Sentencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior. We have upheld the constitutionality of considering such previous conduct in *Williams* v. *New York,* 337 U. S. 241 (1949). We have also upheld the consideration of such conduct, in connection with the offense presently charged, in *McMillan* v. *Pennsylvania,* 477 U. S. 79 (1986). There we held that

the state could consider, as a sentence enhancement factor, visible possession of a firearm during the felonies of which defendant was found guilty.

Thus, consistently with due process, petitioner in the present case could have been sentenced more severely based simply on evidence of the underlying conduct that gave rise to the previous DUI offense. And the state need prove such conduct only by a preponderance of the evidence. *Id.*, at 91. Surely, then, it must be constitutionally permissible to consider a prior uncounseled misdemeanor conviction based on the same conduct where that conduct must be proved beyond a reasonable doubt.

Petitioner contends that, at a minimum, due process requires a misdemeanor defendant to be warned that his conviction might be used for enhancement purposes should the defendant later be convicted of another crime. No such requirement was suggested in *Scott*, and we believe with good reason. In the first place, a large number of misdemeanor convictions take place in police or justice courts which are not courts of record. Without a drastic change in the procedures of these courts, there would be no way to memorialize any such warning. Nor is it at all clear exactly how expansive the warning would have to be; would a Georgia court have to warn the defendant about permutations and commutations of recidivist statutes in 49 other States, as well as the criminal history provision of the Sentencing Guidelines applicable in federal courts? And a warning at the completely general level—that if he is brought back into court on another criminal charge, a defendant such as Nichols will be treated more harshly—would merely tell him what he must surely already know.

Today we adhere to *Scott* v. *Illinois, supra,* and overrule *Baldasar.*[12] Accordingly we hold, consistent with the Sixth

---

[12] Of course States may decide, based on their own constitutions or public policy, that counsel should be available for all indigent defendants charged with misdemeanors. Indeed, many, if not a majority, of States

and Fourteenth Amendments of the Constitution, that an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction.

The judgment of the Court of Appeals is therefore

*Affirmed.*

JUSTICE SOUTER, concurring in the judgment.

I write separately because I do not share the Court's view that *Baldasar* v. *Illinois*, 446 U. S. 222 (1980), has a holding that can be "overrule[d]," *ante*, at 748, and because I wish to be clear about the narrow ground on which I think this case is properly decided. *Baldasar* is an unusual case, not because no single opinion enlisted a majority, but because no common ground united any five Justices. As I read the various opinions, eight Members of the *Baldasar* Court divided, four to four, over whether an uncounseled misdemeanor conviction that is valid because no prison sentence was imposed, see *Scott* v. *Illinois*, 440 U. S. 367 (1979), may be used for automatic enhancement of the prison sentence attached to a subsequent conviction. See *Baldasar*, 446 U. S., at 224 (Stewart, J., joined by Brennan and STEVENS, JJ., concurring); *id.*, at 224–229 (Marshall, J., joined by Brennan and STEVENS, JJ., concurring); *id.*, at 230–235 (Powell, J., joined by Burger, C. J., and White and REHNQUIST, JJ., dissenting).

---

guarantee the right to counsel whenever imprisonment is authorized by statute, rather than actually imposed. See, *e. g.*, Alaska Stat. Ann. § 18.85.100 (1991) ("serious" crime means any crime where imprisonment authorized); Ariz. Rule Crim. Proc. 6.1(b) (indigent defendant shall be entitled to have attorney appointed in any criminal proceeding that may result in punishment by loss of liberty, or where court concludes that appointment satisfies the ends of justice); Cal. Penal Code Ann. § 15 (West 1988), Cal. Penal Code Ann. § 858 (West 1985); *Brunson* v. *State*, 182 Ind. App. 146, 394 N. E. 2d 229 (1979) (right to counsel in misdemeanor proceedings guaranteed by Ind. Const., Art. I, § 13); N. H. Rev. Stat. Ann. § 604–A:2 (1986 and Supp. 1992).

Instead of breaking the tie, the ninth Justice, JUSTICE BLACKMUN, declined to accept the premise on which the others proceeded (that the prior uncounseled conviction was valid under *Scott*), adhering to his earlier position that an uncounseled conviction of the sort involved in *Baldasar* was not valid for any purpose. See 446 U. S., at 229–230 (BLACKMUN, J., concurring) (discussing *Scott, supra,* at 389–390 (BLACKMUN, J., dissenting)). Significantly for present purposes, JUSTICE BLACKMUN gave no indication of his view on whether an uncounseled conviction, if valid under *Scott,* could subsequently be used for automatic sentence enhancement. On the question addressed by the other eight Justices, then, the *Baldasar* Court was in equipoise, leaving a decision in the same posture as an affirmance by an equally divided Court, entitled to no precedential value, see *United States* v. *Pink,* 315 U. S. 203, 216 (1942). Cf. *Waters* v. *Churchill, ante,* p. 661; *ante,* at 685 (SOUTER, J., concurring); *Book Named "John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney General of Mass.,* 383 U. S. 413 (1966) (discussed in *Marks* v. *United States,* 430 U. S. 188, 193–194 (1977)).

Setting *Baldasar* aside as controlling precedent (but retaining the case's even split as evidence), it seems safe to say that the question debated there is a difficult one. The Court in *Scott,* relying on *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972), drew a bright line between imprisonment and lesser criminal penalties, on the theory, as I understand it, that the concern over reliability raised by the absence of counsel is tolerable when a defendant does not face the deprivation of his liberty. See *Scott, supra,* at 372–373; see also *Argersinger, supra,* at 34–37 (discussing studies showing that "the volume of misdemeanor cases . . . may create an obsession for speedy dispositions, regardless of the fairness of the result") (footnote omitted). There is an obvious and serious argument that the line drawn in *Scott* is crossed when, as Justice

Stewart put it in *Baldasar*, a defendant is "sentenced to an increased term of imprisonment *only* because he had been convicted in a previous prosecution in which he had *not* had the assistance of appointed counsel in his defense." 446 U. S., at 224 (concurring opinion) (emphasis in original); see also *id.*, at 227 (Marshall, J., concurring) (petitioner's prison sentence "was imposed as a direct consequence of [the previous] uncounseled conviction and is therefore forbidden under *Scott* and *Argersinger*").

Fortunately, the difficult constitutional question that argument raises need not be answered in deciding this case, cf. *Ashwander* v. *TVA*, 297 U. S. 288, 346–347 (1936) (Brandeis, J., concurring), for unlike the sentence-enhancement scheme involved in *Baldasar*, the United States Sentencing Commission's Guidelines (Guidelines) do not provide for automatic enhancement based on prior uncounseled convictions. Prior convictions, as the Court explains, serve under the Guidelines to place the defendant in one of six "criminal history" categories; the greater the number of prior convictions, the higher the category. See *ante*, at 740, and n. 2. But the Guidelines seek to punish those who exhibit a pattern of "criminal conduct," not a pattern of prior convictions as such, see United States Sentencing Commission, Guidelines Manual (USSG) ch. 4, pt. A (Nov. 1993) (intro. comment.), and accordingly do not bind a district court to the category into which simple addition places the defendant. Thus, while the Guidelines require that "uncounseled misdemeanor sentences where imprisonment was not imposed" are "to be counted in the criminal history score," USSG App. C, amdt. 353 (Nov. 1993), they also expressly empower the district court to depart from the range of sentences prescribed for a criminal-history category that inaccurately captures the defendant's actual history of criminal conduct. See *id.*, § 4A1.3. In particular, the Guidelines authorize downward departure "where the court concludes that a defendant's criminal his-

tory category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." *Ibid.*\*

Under the Guidelines, then, the role prior convictions play in sentencing is presumptive, not conclusive, and a defendant has the chance to convince the sentencing court of the unreliability of any prior valid but uncounseled convictions in reflecting the seriousness of his past criminal conduct or predicting the likelihood of recidivism. A defendant may show, for example, that his prior conviction resulted from railroading an unsophisticated indigent, from a frugal preference for a low fine with no counsel fee, or from a desire to put the matter behind him instead of investing the time to fight the charges.

Because the Guidelines allow a defendant to rebut the negative implication to which a prior uncounseled conviction gives rise, they do not ignore the risk of unreliability associated with such a conviction. Moreover, as the Court observes, permitting a court to consider (in contrast to giving conclusive weight to) a prior uncounseled conviction is "consistent with the traditional understanding of the sentencing process," under which a "judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the

---

\* "Congress gave the Sentencing Commission authority to 'maintai[n] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices.' 28 U. S. C. § 991(b)(1)(B). The Commission used this authority in adopting § 4A1.3, which it said was designed to 'recognize[] that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur.' USSG § 4A1.3 (commentary)." *United States* v. *Beckham*, 968 F. 2d 47, 54 (CADC 1992); see also *United States* v. *Shoupe*, 988 F. 2d 440, 445 (CA3 1993) ("[I]n Guidelines § 4A1.3, the Commission specifically provided district courts with flexibility to adjust the criminal history category calculated through . . . rigid formulae"). Cf. Miller & Freed, Honoring Judicial Discretion Under the Sentencing Reform Act, 3 Fed. Sent. R. 235, 238 (1991) (discussing "Congress' desire to leave substantial sentencing discretion in the hands of the sentencing judge").

kind of information he may consider, or the source from which it may come,'" at least as long as the defendant is given a reasonable opportunity to disprove the accuracy of information on which the judge may rely, and to contest the relevancy of that information to sentencing. *Ante*, at 747 (quoting *United States* v. *Tucker*, 404 U. S. 443, 446 (1972)). Where concern for reliability is accommodated, as it is under the Guidelines, nothing in the Sixth Amendment or our cases requires a sentencing court to ignore the fact of a valid uncounseled conviction, even if that conviction is a less confident indicator of guilt than a counseled one would be. Cf. United States Sentencing Commission, Sentencing Guidelines for United States Courts, 55 Fed. Reg. 5741 (1990) (explaining that valid, uncounseled convictions should be counted in determining a defendant's criminal history category because the alternative would "deprive the [sentencing] court of significant information relevant to the purposes of sentencing").

I therefore agree with the Court that it is "constitutionally permissible" for a federal court to "consider a prior uncounseled misdemeanor conviction" in sentencing a defendant under the Guidelines. *Ante*, at 748. That is enough to answer the constitutional question this case presents, whether "[t]he District Court should . . . have considered [petitioner's] previous uncounseled misdemeanor in computing [his] criminal history score" under the Guidelines. Pet. for Cert. i; see also Brief for United States I (stating question presented as "[w]hether it violated the Constitution for the sentencing court to consider petitioner's prior uncounseled misdemeanor conviction in determining his criminal history score under the Sentencing Guidelines"). And because petitioner did not below, and does not here, contend that counting his 1983 uncounseled conviction for driving under the influence placed him in a criminal-history category that "significantly over-represents the seriousness of [his] criminal history or the likelihood that [he] will commit further crimes," USSG

§ 4A1.3, the Court properly rejects petitioner's challenge to his sentence.

I am shy, however, of endorsing language in the Court's opinion that may be taken as addressing the constitutional validity of a sentencing scheme that automatically requires enhancement for prior uncounseled convictions, a scheme not now before us. Because I prefer not to risk offending the principle that "[t]he Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it,'" *Ashwander*, 297 U. S., at 346 (citation omitted), I concur only in the judgment.

JUSTICE BLACKMUN, with whom JUSTICE STEVENS and JUSTICE GINSBURG join, dissenting.

In 1983, petitioner Kenneth O. Nichols pleaded *nolo contendere* to driving under the influence of alcohol (DUI) and paid a $250 fine. He was not represented by counsel. Under *Scott* v. *Illinois*, 440 U. S. 367 (1979), this uncounseled misdemeanor could not have been used as the basis for any incarceration, not even a 1-day jail sentence. Seven years later, when Nichols pleaded guilty to a federal drug charge, this uncounseled misdemeanor, used to enhance his sentence, led directly to his imprisonment for over two years. The majority's holding that this enhancement does not violate the Sixth Amendment is neither compelled by *Scott* nor faithful to the concern for reliability that lies at the heart of our Sixth Amendment cases since *Gideon* v. *Wainwright*, 372 U. S. 335 (1963). Accordingly, I dissent.

I

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." In *Gideon* v. *Wainwright*, this Court recognized the "Sixth Amendment's guarantee of counsel" as "'fundamental and essential to a fair trial,'" *id.*, at 342, because "'[e]ven the intelligent and educated layman

. . . requires the guiding hand of counsel at every step in the proceedings against him,'" *id.*, at 345, quoting *Powell* v. *Alabama*, 287 U. S. 45, 69 (1932).

Both the plain wording of the Amendment and the reasoning in *Gideon* would support the guarantee of counsel in "all" criminal prosecutions, petty or serious, whatever their consequences. See *Scott* v. *Illinois*, 440 U. S., at 376, 379 (Brennan, J., dissenting). Although the Court never has read the guarantee of counsel that broadly, one principle has been clear, at least until today: No imprisonment may be imposed on the basis of an uncounseled conviction. Thus, in *Argersinger* v. *Hamlin*, 407 U. S. 25 (1972), the Court rejected a formalistic distinction between petty and non-petty offenses and applied *Gideon* to "any criminal trial, where an accused is deprived of his liberty." *Id.*, at 32; *id.*, at 41, 42 (Burger, C. J., concurring in result) (because "any deprivation of liberty is a serious matter," no individual "can be imprisoned unless he is represented by counsel").

A year later, *Scott* confirmed that any deprivation of liberty, no matter how brief, triggers the Sixth Amendment's right to counsel:

> "Even were the matter *res nova*, we believe that the central premise of *Argersinger*—that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel. . . . We therefore hold that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." 440 U. S., at 373–374.

Finally, although the Court, in *Baldasar* v. *Illinois*, 446 U. S. 222 (1980), in one sense, was "splintered," *ante*, at 740, a

majority of the Court concluded that an uncounseled conviction could not be used to support a prison term, either initially, to punish the misdemeanor, or later, to lengthen the jail time for a subsequent conviction. See *Baldasar*, 446 U. S., at 224 (Stewart, J., concurring) (sentencing an indigent "to an increased term of imprisonment *only* because he had been convicted in a previous prosecution in which he had *not* had the assistance of appointed counsel in his defense" violated *Scott*); 446 U. S., at 226 (Marshall, J., concurring) (even on *Scott*'s terms, a "prior uncounseled misdemeanor conviction could not be used collaterally to impose an increased term of imprisonment upon a subsequent conviction"); 446 U. S., at 230 (BLACKMUN, J., concurring) (adhering to dissenting position in *Scott* that an uncounseled conviction is invalid not only where the defendant is sentenced to any actual incarceration but also where the defendant is convicted of an offense punishable by more than six months in prison).[1]

---

[1] I dissented in *Scott* v. *Illinois*, 440 U. S. 367 (1979), in which five Members of the Court held that the Sixth Amendment required counsel only for convictions that were *punished* by actual imprisonment, and not for offenses that were *punishable* by imprisonment, but where imprisonment was not imposed. Believing that the line the Court drew did not protect indigent defendants adequately or keep faith with our Sixth Amendment principles, I argued for a right to counsel not only where the defendant was convicted and sentenced to jail time, but also where the defendant was convicted of any offense punishable by more than six months' imprisonment, regardless of the punishment actually imposed. *Id.*, at 389–390.

A year later, when the Court decided *Baldasar* v. *Illinois*, 446 U. S. 222 (1980), I adhered to this position, concurring in the Court's *per curiam* opinion and its judgment that the uncounseled conviction could not be used to justify increasing Baldasar's jail time. Although I based my decision on my belief that the uncounseled conviction was invalid in the first instance because Baldasar was charged with an offense punishable by more than six months in prison, I expressed no disagreement, and indeed had none, with the premise that an uncounseled conviction that was valid under *Scott* was invalid for purposes of imposing increased incarceration for a subsequent offense. 446 U. S., at 229–230. Obviously, logic dictates that, where the threat of imprisonment is enough to trigger the Sixth

Thus, the animating concern in the Court's Sixth Amendment jurisprudence has been to ensure that no indigent is deprived of his liberty as a result of a proceeding in which he lacked the guiding hand of counsel. While the Court has grappled with, and sometimes divided over, extending this constitutional guarantee beyond convictions that lead to actual incarceration, it has never permitted, before now, an uncounseled conviction to serve as the basis for any jail time.

## II

Although the Court now expressly overrules *Baldasar* v. *Illinois*, *ante*, at 748, it purports to adhere to *Scott*, describing its holding as a "logical consequence" of *Scott*, *ante*, at 746. This logic is not unassailable. To the contrary, as Justice Marshall stated in *Baldasar*, "a rule that held a conviction invalid for imposing a prison term directly, but valid for imposing a prison term collaterally, would be an illogical and unworkable deviation from our previous cases." 446 U. S., at 228–229 (concurring opinion). It is more logical, and more consistent with the reasoning in *Scott*, to hold that a conviction that is invalid for imposing a sentence for the offense itself remains invalid for increasing the term of imprisonment imposed for a subsequent conviction.

The Court skirts *Scott*'s actual imprisonment standard by asserting that enhancement statutes "do not change the penalty imposed for the earlier conviction," *ante*, at 747, because they punish only the later offense. Although it is undeniable that recidivist statutes do not impose a second punishment for the first offense in violation of the Double Jeopardy Clause, *Moore* v. *Missouri*, 159 U. S. 673, 677 (1895), it also is undeniable that Nichols' DUI conviction directly resulted in more than two years' imprisonment. In any event, our concern here is not with multiple punishments, but with reliability. Specifically, is a prior uncounseled misdemeanor

Amendment's guarantee of counsel, the actual imposition of imprisonment through an enhancement statute also requires the appointment of counsel.

conviction sufficiently reliable to justify additional jail time imposed under an enhancement statute? Because imprisonment is a punishment "different in kind" from fines or the threat of imprisonment, *Scott*, 440 U. S., at 373, we consistently have read the Sixth Amendment to require that courts decrease the risk of unreliability, through the provision of counsel, where a conviction results in imprisonment. That the sentence in *Scott* was imposed in the first instance and the sentence here was the result of an enhancement statute is a distinction without a constitutional difference. 

The Court also defends its position by arguing that the process of sentencing traditionally is "less exacting" than the process of establishing guilt. *Ante*, at 747. This may be true as a general proposition,[2] but it does not establish that

---

[2] In support of its position, the majority cites several cases that refer to a sentencing judge's traditional discretion. The cases provide scant, if any, support for the majority's rule sanctioning the use of prior uncounseled convictions as the basis for increased terms of imprisonment. None even addresses the Sixth Amendment guarantee of counsel.

In *McMillan* v. *Pennsylvania*, 477 U. S. 79 (1986), the Court held 5 to 4 that a state statute defining visible possession of a firearm as a sentencing consideration that could be proved by a preponderance of the evidence, rather than as an element of the crime that must be proved beyond a reasonable doubt, did not violate due process. *McMillan* did not involve the use of a prior conviction in a subsequent proceeding. Additionally, *McMillan* involved only felony convictions, in which the defendants were entitled to counsel at every step of the proceedings to assist in proving or disproving the facts to be relied on in sentencing. The Court also noted that the "risk of error" in the challenged proceeding was "comparatively slight" because visible possession was "a simple, straightforward issue susceptible of objective proof." *Id.*, at 84. The same cannot be said for the reliability of prior uncounseled misdemeanors. See *Argersinger* v. *Hamlin*, 407 U. S. 25, 34 (1972) (observing that the volume of misdemeanor cases "may create an obsession for speedy dispositions, regardless of the fairness of the result"); *id.*, at 35 (noting that "'[t]he misdemeanor trial is characterized by insufficient and frequently irresponsible preparation,'" quoting Hellerstein, The Importance of the Misdemeanor Case on Trial and Appeal, 28 The Legal Aid Brief Case 151, 152 (1970)). Moreover, a finding of visible possession did not expose a defendant to a greater or

an uncounseled conviction is reliable enough for Sixth Amendment purposes to justify the imposition of imprisonment, even in the sentencing context. Nor does it follow that, because the state may attempt to prove at sentencing conduct justifying greater punishment, it also may rely on a prior uncounseled conviction. In *McMillan* v. *Pennsylvania*, 477 U. S. 79 (1986), for example, the State was permitted to prove at sentencing that the defendant visibly possessed a firearm during the commission of the felonies of which he was convicted.[3] Where, as in *McMillan*, the state sets out

additional punishment than otherwise authorized, *McMillan*, 477 U. S., at 88, while the prior conviction at issue here exposed petitioner to two additional years in prison.

*Wisconsin* v. *Mitchell*, 508 U. S. 476 (1993), in which the Court rejected a First Amendment challenge to a state statute that enhanced a penalty based on the defendant's motive, is no more helpful to the majority's position. The Court simply observed that the defendant's motive was a factor traditionally considered by sentencing judges; it said nothing about the validity of prior convictions or even about the standard required to prove the motive. Similarly, although *United States* v. *Tucker*, 404 U. S. 443, 446 (1972), made passing reference to a sentencing judge's broad inquiry, it held only that *Gideon* v. *Wainwright*, 372 U. S. 335 (1963), required resentencing where the sentencing court had considered prior felony convictions that later were found to have been uncounseled.

Finally, *Williams* v. *New York*, 337 U. S. 241 (1949), was a Confrontation Clause challenge to a sentencing judge's consideration of evidence obtained through a presentence investigation. The court did not rely on any prior convictions; the defendant, who was represented by counsel, did not challenge the accuracy of the information the judge considered, ask the judge to disregard it, or seek to refute or discredit it; and the consideration of this information did not expose the defendant to a greater or additional punishment.

[3] *McMillan*, of course, was a due process case. Curiously, the Court appears to rest its holding as much on the Due Process Clause as on the Sixth Amendment. See *ante*, at 748. But even if the use of a prior uncounseled conviction does not violate due process, that does not conclusively resolve the Sixth Amendment question. Compare *Betts* v. *Brady*, 316 U. S. 455, 462 (1942) (holding that the right to counsel was not required under the Due Process Clause of the Fourteenth Amendment and recognizing due process as a "concept less rigid and more fluid than those envis-

to prove actual conduct rather than the fact of conviction in a sentencing proceeding at which the defendant is represented by counsel, counsel can put the state to its proof, examining its witnesses, rebutting its evidence, and testing the reliability of its allegations. See *Argersinger*, 407 U. S., at 31 (the accused "'requires the guiding hand of counsel *at every step in the proceedings* against him,'" quoting *Powell* v. *Alabama*, 287 U. S., at 69) (emphasis added). In contrast, where the state simply submits a record of a conviction obtained in a proceeding in which the defendant lacked the assistance of counsel, we lack similar confidence that the conviction reliably reflects the defendant's conduct.

Moreover, as a practical matter, introduction of a record of conviction generally carries greater weight than other evidence of prior conduct. Indeed, the United States Sentencing Commission's Guidelines (Guidelines) *require* a district court to assess criminal history points for prior convictions, and to impose a sentence within the range authorized by the defendant's criminal history, unless it concludes that a defendant's "criminal history category significantly over-

---

aged in other specific and particular provisions of the Bill of Rights"), with *Gideon* v. *Wainwright*, 372 U. S., at 339 (holding that the Sixth Amendment requires counsel in all state felony prosecutions).

Nor do I read the majority's reliance on due process to reflect an understanding that due process requires only partial incorporation of the Sixth Amendment right to counsel in state courts. This Court long has recognized the "Sixth Amendment's guarantee of counsel" as "'fundamental and essential to a fair trial'" and therefore "made obligatory upon the States by the Fourteenth Amendment." *Id.*, at 342; see also *Johnson* v. *Zerbst*, 304 U. S. 458, 462 (1938) (the assistance of counsel "is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty"); *Grosjean* v. *American Press Co.*, 297 U. S. 233, 243–244 (1936) ("the fundamental right of the accused to the aid of counsel in a criminal prosecution" is "safeguarded against state action by the due process of law clause of the Fourteenth Amendment"). No decision of this Court even has intimated that the Sixth Amendment right to counsel somehow is diluted or truncated in state proceedings.

represents the seriousness of a defendant's criminal history or the likelihood that a defendant will commit further crimes." United States Sentencing Commission, Guidelines Manual § 4A1.3 (Nov. 1993). Realistically, then, the conclusion that a state may prove prior conduct in a sentencing proceeding at which the defendant is aided by counsel does not support, much less compel, a conclusion that the state may, in lieu of proving directly the prior conduct, rely on a conviction obtained against an uncounseled defendant.[4]

---

[4] JUSTICE SOUTER concludes that this provision passes Sixth Amendment muster by providing the defendant a "reasonable opportunity" to disprove the accuracy of the prior conviction. *Ante*, at 753. Even assuming that the Guidelines would permit a sentencing court to depart downward in response to a defendant's claim that his conviction resulted from his lack of sophistication or his calculation that it was cheaper to plead and pay a low fine than to retain counsel and litigate the charge, such a safety valve still does not accommodate reliability concerns sufficiently. As Chief Justice Burger recognized in *Argersinger*, "[a]ppeal from a conviction after an uncounseled trial is not likely to be of much help to a defendant since the die is usually cast when judgment is entered on an uncounseled trial record." 407 U. S., at 41 (concurring opinion). A collateral proceeding holds forth no greater promise of relief. The uncounseled misdemeanor convictions that are considered inherently unreliable under *Argersinger* and *Scott* are presumptively valid under most sentence enhancement schemes, see, *e. g.*, *Custis* v. *United States, ante*, p. 485 (limiting a defendant's right to attack as unconstitutional a prior conviction used to enhance a sentence under the Armed Career Criminal Act of 1984, 18 U. S. C. § 924(e)); *Parke* v. *Raley*, 506 U. S. 20 (1992) (presumption of validity that attaches to final judgments properly extended to prior convictions used for sentence enhancement under a state recidivism statute), and are presumptively reflected in a defendant's criminal history score—and sentence—under the Guidelines, see United States Sentencing Commission, Guidelines Manual App. C, amdt. 353 (Nov. 1993) ("Prior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed").

Moreover, although it might be salutary for courts to consider under the Guidelines a defendant's reasons other than culpability for pleading *nolo contendere* to a prior misdemeanor conviction, I do not share JUSTICE

## III

Contrary to the rule set forth by the Court, a rule that an uncounseled misdemeanor conviction *never* can form the basis for a term of imprisonment is faithful to the principle born of *Gideon* and announced in *Argersinger* that an uncounseled misdemeanor, like an uncounseled felony, is not reliable enough to form the basis for the severe sanction of incarceration. This Court in *Gideon* stated that "reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." 372 U. S., at 344. *Gideon* involved a felony, but we recognized in *Argersinger*, 407 U. S., at 31, that counsel was "often a requisite to the very existence of a fair trial" in misdemeanor cases, as well. In the absence of this "assurance" of or "requisite" to a fair trial, we cannot have confidence in the reliability of the conviction and, therefore, cannot impose a prison term based on it.

These reliability concerns have prompted this Court to hold that an uncounseled *felony* conviction cannot later be used to increase a prison term under a state recidivist statute, *Burgett* v. *Texas*, 389 U. S. 109 (1967), nor even be considered by a court in sentencing for a subsequent conviction, *United States* v. *Tucker*, 404 U. S. 443 (1972). The Court offers no reason and I can think of none why the same rules

---

SOUTER's confidence that such a benevolent review of a defendant's circumstances is occurring now. Even if it were, a district court, after the most probing review, generally may depart downward only in "atypical" cases, outside the "heartland" carved by each guideline, United States Sentencing Commission, Guidelines Manual, ch. 1, pt. A, comment., 4(b) (Nov. 1991). This does not alleviate our concern in *Argersinger* that the "typical" misdemeanor case presents pressures to plead guilty or *nolo contendere*, regardless of the fairness or accuracy of that plea. 407 U. S., at 34–36. Accordingly, I find the district court's authority to depart downward too tenuous a check on the use of unreliable misdemeanor convictions to salvage a sentencing scheme that is, in my view, a violation of *Scott*.

should not apply with regard to uncounseled *misdemeanor* convictions. Counsel can have a profound effect in misdemeanor cases, where both the volume of cases and the pressure to plead are great. See *Argersinger*, 407 U. S., at 36 ("'[m]isdemeanants represented by attorneys are five times as likely to emerge from police court with all charges dismissed as are defendants who face similar charges without counsel,'" quoting American Civil Liberties Union, Legal Counsel for Misdemeanants, Preliminary Report 1 (1970)); *Baldasar*, 446 U. S., at 228, n. 2 (Marshall, J., concurring) (recognizing that misdemeanor convictions may be less reliable than felony convictions because they are obtained through "assembly-line justice" and because jurors may be less scrupulous in applying the reasonable-doubt standard to a minor offense). Given the utility of counsel in these cases, the inherent risk of unreliability in the absence of counsel, and the severe sanction of incarceration that can result directly or indirectly from an uncounseled misdemeanor, there is no reason in law or policy to construe the Sixth Amendment to exclude the guarantee of counsel where the conviction subsequently results in an increased term of incarceration.

Moreover, the rule that an uncounseled misdemeanor conviction can never be used to increase a prison term is eminently logical, as Justice Marshall made clear in *Baldasar:*

> "An uncounseled conviction does not become more reliable merely because the accused has been validly convicted of a subsequent offense. For this reason, a conviction which is invalid for purposes of imposing a sentence of imprisonment for the offense itself remains invalid for purposes of increasing a term of imprisonment for a subsequent conviction under a repeat-offender statute." *Id.*, at 227–228 (concurring opinion).[5]

---

[5] From another perspective, the prior uncounseled conviction can be viewed as a "hybrid" conviction: valid for the purpose of imposing a sentence, but invalid for the purpose of depriving the accused of his lib-

Finally, this rule is workable. As the Court has engaged in "constitutional line drawing" to determine the "precise limits and . . . ramifications" of *Gideon's* principles, *Scott*, 440 U. S., at 372, it has sought to draw a clear line, one that adequately informs judges, prosecutors, and defendants of the consequences of their actions and decisions. Under the clear rule that an uncounseled misdemeanor conviction can never justify any term of imprisonment, the judge and the parties will know, at the beginning of a misdemeanor trial, that no imprisonment may be imposed, directly or collaterally, based on that proceeding, unless counsel is appointed to represent the indigent accused. See *Argersinger*, 407 U. S., at 42 (Burger, C. J., concurring in result). Admittedly, this rule might cause the state to seek and judges to grant appointed counsel for more indigent defendants, in order to preserve the right to use the conviction later for enhancement purposes. The Sixth Amendment guarantee of counsel should not be subordinated to these costs. See *id.*, at 43, 44 (Burger, C. J., concurring in result) (accepting that the Court's holding would require the appointment of more defense counsel). In any event, the majority's rule, which exposes indigent defendants to substantial sentence enhancements on the basis of minor offenses, may well have the same result by encouraging more indigent defendants to seek counsel and to litigate offenses to which they other-

---

erty. See *Baldasar*, 446 U. S., at 232 (Powell, J., dissenting). There is nothing intuitively offensive about a "hybrid." See *id.*, at 226 (Marshall, J., concurring) (noting and accepting that Baldasar's conviction was not valid for all purposes); see also 15 U. S. C. § 16(a) (certain consent decrees or consent judgments in favor of the Government in a civil or criminal antitrust action shall not be prima facie evidence in a subsequent proceeding brought by another party); § 16(h) (district court proceedings leading to a consent judgment proposed by the Government are inadmissible as evidence in subsequent proceedings); 10 J. von Kalinowski, Antitrust Laws and Trade Regulation § 105.02[10], p. 110 (1993) ("[A]llegations based on pleas of *nolo contendere* in government suits, and the judgments entered thereon, should *not* be included in the complaint" in a subsequent action).

wise might have pleaded. This case is illustrative. When charged with driving under the influence, petitioner sought out an attorney, who told him that he did not need a lawyer if he was pleading *nolo contendere.* This advice made sense if a $250 fine was the only consequence of the plea. Its soundness is less apparent where the consequences can include a 2-year increase in a prison sentence down the road.

## IV

With scant discussion of Sixth Amendment case law or principles, the Court today approves the imposition of two years of incarceration as the consequence of an uncounseled misdemeanor conviction. Because uncounseled misdemeanor convictions lack the reliability this Court has always considered a prerequisite for the imposition of any term of incarceration, I dissent.

JUSTICE GINSBURG, dissenting.

In *Custis* v. *United States, ante,* p. 485, the Court held that, with the sole exception of convictions obtained in violation of the right to counsel, a defendant in a federal sentencing proceeding has no right to attack collaterally a prior state conviction used to enhance his sentence under the Armed Career Criminal Act of 1984. This case is dispositively different.

*Custis* presented a forum question. The issue was *where,* not *whether,* the defendant could attack a prior conviction for constitutional infirmity. See *ante,* at 497 (Custis "may attack his state sentence in Maryland or through federal habeas review").

Here, we face an uncounseled prior conviction tolerable under the Sixth Amendment "assistance of counsel" guarantee only because it did not expose defendant Nichols to the prospect of incarceration. See *Scott* v. *Illinois,* 440 U. S. 367 (1979). Today's decision enlarges the impact of that uncounseled conviction. It turns what was a disposition allowing

no jail time—a disposition made for one day and case alone—into a judgment of far heavier weight. Nichols does not attack his prior uncounseled conviction for what it was. He is seeking only to confine that conviction to the term (no incarceration) that rendered it constitutional.

Recognizing that the issue in this case is not like the one presented in *Custis*, I join JUSTICE BLACKMUN's dissenting opinion.