# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 4, 2015

Plaintiff-Appellant,

v

No. 322857
Tuscola Circuit Court
LC No. 13-012672-FH

TAMMY LOUISE HARBIN,

Defendant-Appellee.

Before: WILDER, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

The prosecutor appeals by delayed leave granted[1] from the circuit court's amendment of defendant's judgment of sentence. We vacate the amended judgment of sentence and remand for resentencing.

Defendant was charged with five controlled substance violations. Pursuant to a plea agreement, she pled guilty to operating/maintaining a laboratory involving methamphetamine, MCL 333.7401c(2)(f), and possession of marijuana, MCL 333.7403(2)(d); and in exchange the prosecutor dropped the remaining charges and subsequent offender enhancements authorized by MCL 333.7403(2)(d). The court accepted the plea and sentenced defendant as a habitual offender, fourth offense, MCL 769.12, to concurrent prison terms of 6 to 20 years for each count.

Thereafter, defendant filed a timely motion to correct an invalid sentence. MCR 6.429. She alleged errors in the scoring of offense variable 12 (OV 12) and prior record variable 5 (PRV 5). The court granted defendant's motion with respect to OV 12 and scheduled a hearing regarding the scoring of PRV 5. Defendant contended that her prostitution convictions should not be scored under PRV 5 because prostitution is a crime against public order, MCL 750.451; however, pursuant to MCL 777.16w, and MCL 777.55(2)(a), PRV 5 may only be scored for "offenses against person or property, weapons offenses, or offenses involving controlled substances . . ." Defendant further contended that a 1994 plea-based conviction for OUIL and unlawful use of a license plate should also be excluded because she was not represented by

---

[1] *People v Harbin*, unpublished order of the Court of Appeals, entered September 24, 2014 (Docket No. 322857).

-1-

counsel and the record does not show that she waived her right to court-appointed counsel. Defendant concluded that excluding the prostitution convictions and the 1994 uncounseled conviction would reduce PRV 5 from 20 to 5 points.

The prosecutor conceded that the prostitution convictions should not be used in scoring PRV 5, so PRV 5 should have been reduced from 20 points to 10 points.[2] Regarding the 1994 OUIL conviction, the prosecutor noted that the register of actions from the case showed that an "advice of rights" form had been filed, from which the prosecutor deduced that defendant had waived her right to court-appointed counsel. The prosecutor also argued that defendant had not been entitled to an attorney in any event, because she had not actually been imprisoned for the 1994 OUIL conviction, relying on *People v Reichenbach*, 459 Mich 109; 587 NW2d 1 (1998). Defendant agreed with the prosecutor's reading of *Reichenbach*, but contended that under *People v Hannan (After Remand)*, 200 Mich App 123; 504 NW2d 189 (1993), the conviction could not be used. The court granted defendant's objection to the scoring of PRV 5. Consequently, PRV 5 was rescored at 5 points, resulting in a total PRV score of 45 and a total OV score of 5, and therefore a sentencing guidelines range of 36 to 120 months. The court sentenced defendant to concurrent prison terms of 3 to 20 years.

The prosecutor maintains on appeal that under *Reichenbach*, defendant's 1994 OUIL conviction should be scored under PRV 5 because indigent misdemeanants are not entitled to court-appointed attorneys unless they are actually imprisoned. The prosecutor asserts that because the trial court did not sentence defendant to a term of imprisonment for the 1994 OUIL conviction, that conviction is constitutionally valid and should be used in scoring PRV 5. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which [we review] de novo." *Id*. We note that the addition of 5 points to defendant's total PRV score would raise her PRV level from D to E, resulting in a revised sentencing guidelines range of 51 to 170 months. Therefore, her present sentence would be outside the guidelines range and in the absence of any articulation on the record of substantial and compelling reasons for a guidelines range departure, we would be compelled to reverse it. See *People v Babcock*, 469 Mich 247, 255-256; 666 NW2d 231 (2003).

PRV 5 addresses the scoring of prior misdemeanor convictions or prior misdemeanor juvenile adjudications. MCL 777.55(1). Unless they would enhance the sentencing offense to a felony, all prior misdemeanors involving controlled substances, and all those for operating a vehicle "under the influence or impaired by alcohol, a controlled substance, or a combination of alcohol and a controlled substance," are to be scored. MCL 777.55(2). Section 55(1) provides in part as follows:

---

[2] The parties agreed that defendant had two other misdemeanor convictions that were scorable.

Score prior record variable 5 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> (a) The offender has 7 or more prior misdemeanor convictions or prior misdemeanor juvenile adjudications……………………………….……..20 points

> (b) The offender has 5 or 6 prior misdemeanor convictions or prior misdemeanor juvenile adjudications…………………………………...15 points

> (c) The offender has 3 or 4 prior misdemeanor convictions or prior misdemeanor juvenile adjudications………………………………….…10 points

> (d) The offender has 2 prior misdemeanor convictions or prior misdemeanor juvenile adjudications………………………...………..5 points

Neither party disputes that defendant's 1994 OUIL conviction falls within the category of misdemeanors that can be scored under PRV 5. The disputed issue is whether the conviction is constitutionally invalid because it was obtained without benefit of counsel and without waiving the right to court-appointed counsel. If the conviction is constitutionally invalid, then defendant argues that it cannot be used to score PRV 5. *Hannan*, 200 Mich App at 128 ("A sentencing court may not consider a defendant's prior felony, misdemeanor, or ordinance convictions obtained without the benefit of counsel or without a valid waiver of the right to counsel" because "such convictions are not sufficiently reliable to support the severe sanction of imprisonment.").

The United States Supreme Court held in *Argersinger v Hamlin*, 407 US 25, 37; 92 S Ct 2006; 32 L Ed 2d 530 (1972), that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." Seven years later, the Court clarified what the "actual imprisonment standard" means: "[W]e believe that the central premise of *Argersinger*—that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." *Scott v Illinois*, 440 US 367, 373; 99 S Ct 1158; 59 L Ed 2d 383 (1979). Consistent with *Argersinger* and *Scott*, our Supreme Court held in *Reichenbach*, 459 Mich at 109, that "a defendant accused of a misdemeanor is entitled to appointed trial counsel only if 'actually imprisoned.'"

The prosecutor contends that because defendant was placed on probation for the 1994 OUIL conviction, and because the mere threat of imprisonment does not constitute "actual imprisonment," defendant's uncounseled conviction is constitutionally valid and can be considered when scoring PRV 5. Defendant contends that under *Alabama v Shelton*, 535 US 654; 122 S Ct 1764; 152 L Ed 2d 888 (2002), she was entitled to counsel because she was exposed to possible incarceration, MCL 257.625, if she violated the terms of her probation. MCL 771.4.

In *Shelton*, an indigent defendant was given a suspended sentence of 30 days in the county prison on an uncounseled misdemeanor conviction for third-degree assault. *Shelton*, 535

US at 658. The defendant was placed on two years' unsupervised probation conditioned on his payment of a fine, court costs, reparations, and restitution. *Id*. On appeal, the Alabama Supreme Court concluded that "a suspended sentence constitutes a 'term of imprisonment' within the meaning of *Argersinger* and *Scott* even though incarceration is not immediate or inevitable." *Id*. at 659. It therefore "affirmed [the defendant's] conviction and the monetary portion of his punishment, but invalidated that aspect of his sentence imposing 30 days of suspended jail time." *Id*. at 659-660. The United States Supreme Court affirmed, holding that "a suspended sentence that may end up in the actual deprivation of liberty may not be imposed unless the defendant was accorded the 'guiding hand of counsel' in the prosecution for the crime charged." *Id*. at 658 (internal quotation marks and citation omitted).

Defendant's reliance on *Shelton* is misplaced. *Shelton* expressly declined to address the issue of whether sentences of probation uncoupled from suspended sentences were constitutionally valid. *Id*. at 672-673. Although defendant's probation was linked to certain conditions, it was not linked to a suspended sentence of imprisonment. Although it is *possible* for a person sentenced to probation to end up incarcerated, the fundamental nature of a probation sentence differs substantially in both kind and severity from a suspended sentence of imprisonment. We admit to some skepticism whether a defendant's entitlement to an attorney should depend on what ultimately happens *after* the proceedings to which an attorney might have made a difference.[3] However, the United States Supreme Court assures us that the trial judge "will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts." *Argersinger*, 407 US at 40. Certainly, trial courts *are* in the best position to evaluate the situations before them and would have a strong motivation to err on the side of caution.

Under the circumstances, because defendant was not, in fact, imprisoned as a result of her 1994 OUIL conviction, the trial court's decision in that case not to provide her with counsel satisfies the "actual imprisonment" standard established by *Argersinger* and *Scott*, and adopted by Michigan's Supreme Court in *Reichenbach*. Consequently, defendant's 1994 OUIL conviction should be used in scoring PRV 5. MCL 777.55(2); *Nichols v United States*, 511 US 738, 746-747; 114 S Ct 1921; 128 L Ed 2d 745 (1994) (holding that "an uncounseled conviction valid under *Scott* may be relied upon to enhance the sentence for a subsequent offense, even though the sentence entails imprisonment"). Likewise, to the extent *Hannan* held that *no*

---

[3] As an initial matter, a monetary fine could be utterly devastating to a defendant in already-marginal financial circumstances, possibly even more so than incarceration. If nothing else, it should be obvious that the "real world" impact of a given fine will have a far greater effect on someone who cannot afford an attorney than on someone who can. Thus, those persons who would be disproportionately affected by a fine would seem to also be disproportionately likely to be unable to properly defend themselves. In any event, all other things being equal, if incarceration is a possibility, it stands to reason that it is also possible that a defendant who is deemed not to "need" counsel could, *after jeopardy has attached*, turn out to have "needed" counsel after all. However, while those possibilities concern us, no such situation appears before us today.

uncounseled conviction may be considered by a sentencing court, it is inconsistent with the *Nichols* Court's explanation of the significance of *Scott*.

Defendant contends that even if the 1994 OUIL conviction is itself constitutionally valid, if it is used to score PRV 5 at 10 points instead of 5 points, her guidelines sentence range increases by 15 months. Because defendant was sentenced at the bottom of the guidelines range as scored by the trial court, her minimum prison term necessarily increases by at least the same length of time, and she argues that this violates *Reichenbach*'s holding. We disagree. The fact that scoring defendant's 1994 OUIL conviction adds to her term of imprisonment is conceptually distinct from being imprisoned in the first place on an uncounseled conviction. The United States Supreme Court has "consistently sustained repeat-offender laws as penalizing only the last offense committed by the defendant." *Nichols*, 511 US at 747 (citation omitted); see also *Reichenbach*, 459 Mich at 123.

Defendant's contention that the prosecutor did not meet its burden to prove that the uncounseled conviction was valid is also unavailing. The authoritative register of actions clearly indicates that defendant was not sentenced to jail time and an advice of rights had been filed.

In sum, the trial court erred in finding that defendant's 1994 OUIL conviction was constitutionally infirm and could not be used for scoring PRV 5. We vacate the court's amended judgment of sentence and remand the matter to the circuit court for resentencing. We do not retain jurisdiction.


/s/ Kurtis T. Wilder
/s/ Amy Ronayne Krause

-5-