**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 9, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

WAYNE JACKSON,

       Defendant-Appellant.

No. 06-2079

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-05-1088-JAP-2)**

Howard L. Anderson, Las Cruces, New Mexico, for Defendant-Appellant.

Gregory B. Wormuth, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Las Cruces, New Mexico, for Plaintiff-Appellee.

Before **TACHA**, Chief Circuit Judge, **BRISCOE**, and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

Wayne Jackson contends that the federal district court charged with assessing an appropriate sentence for his participation in a conspiracy to distribute cocaine erred by considering his prior uncounseled state misdemeanor

sentences for domestic violence and the negligent use of a firearm, and that this error implicates his Sixth Amendment right to counsel. Our case law and repeated guidance from the Supreme Court, however, instruct that a federal sentencing court may, consistent with the Sixth Amendment, take into account a defendant's previous uncounseled misdemeanor convictions, together with any sentence that does not result in actual imprisonment. Though constrained to disregard the portion of his uncounseled misdemeanor sentence resulting in a prison term, the district court was therefore free to devise a sentence taking account of Mr. Jackson's prior misdemeanor convictions and associated fine. Proceeding as it did on just this course, we affirm the district court's judgment.

I

On September 14, 2005, Mr. Jackson pled guilty to six counts of illegal drug distribution and one count of conspiracy in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and 18 U.S.C. § 2, based on the fact that Mr. Jackson and a cohort sold approximately 7.36 grams of crack cocaine and an additional 2.63 grams of cocaine to undercover officers on six different occasions in Roswell, New Mexico, during early 2005. In the usual course, a presentence report ("PSR") was prepared for the district court analyzing Mr. Jackson's background and prior criminal history. The PSR in this case took note of a pair of prior convictions and thus assessed Mr. Jackson with two criminal history points. One of these points derived from Mr. Jackson's conviction for driving

while intoxicated in 1996. The other point, and the font of this litigation, arose

from Mr. Jackson's 1995 New Mexico state convictions for battery, domestic

violence, and the negligent use of a firearm. For these latter offenses, Mr.

Jackson was sentenced to 90 days in custody, all of which was suspended, and

ordered to pay a fine of $528.[1]

By virtue of their comparatively "clean" records, Congress has instructed

that individuals with but a single criminal history point may be eligible for the so-

called "safety valve" reduction codified in 18 U.S.C. § 3553(f); under this

provision, individuals may escape the normal operation of Congress's mandatory-

minimum five-year sentence for convictions under 21 U.S.C. §§ 841(b)(1)(C) and

846 and, instead, obtain sentences as low as 24 months under the advisory

guidelines, *see* 2005 United States Sentencing Guidelines ("USSG") §§ 5C1.2(b),

5A (Table).[2] Mr. Jackson urged the district court in this case to disregard entirely

his 1995 convictions and sentence for purposes of tallying his criminal history

score (and thus eligibility for the safety valve reduction), contending that the state

---

[1] Mr. Jackson contends that $350 of his fine was suspended in connection with his obtaining drug counseling. *See* Tr. R. Vol. 1, Doc. 33, ¶ 1.

[2] USSG § 5C1.2(b) provides that a safety valve recipient whose offense would otherwise carry a statutory mandatory minimum of at least five years must be sentenced at an adjusted offense level of at least 17, which has a recommended sentencing range of 24 to 30 months for criminal history category I. In this case, Mr. Jackson had an adjusted offense level of 23, PSR at 8, which would have been reduced to 21 if he qualified for the safety valve, *see* USSG § 2D1.1(b)(7), resulting in a recommended sentencing range of 37 to 46 months for criminal history category I.

of New Mexico violated his Sixth Amendment rights in his 1995 proceeding by failing to afford him the assistance of counsel or the opportunity to waive such assistance knowingly. The district court held two sentencing hearings on the matter and ordered supplemental briefing.

Before the district court, the government conceded that Mr. Jackson failed to receive counsel in his 1995 state court case, that he was entitled to such assistance, and, thus, that the conditional prison sentence he received violated the Sixth Amendment. Still, the government submitted, the conviction itself, together with the portion of the sentence imposing a fine, was both constitutional and sufficient to sustain the assessment of a criminal history point under extant Supreme Court and Tenth Circuit precedent. The district court ultimately concurred, holding that, even after excising the portion of the sentence relating to imprisonment derived in violation of his Sixth Amendment right to counsel, Mr. Jackson's 1995 convictions and fine merited the assessment of the contested criminal history point; on the basis of this second point, the district court denied application of the statutory safety valve and imposed the mandatory minimum sentence of five years' imprisonment. Mr. Jackson appealed.

II

A

The Sixth Amendment speaks of a defendant's right "[i]n all criminal prosecutions" to "have the [a]ssistance of [c]ounsel." U.S. Const. amend. VI. That this language affords not merely the right to retain counsel but the associated right of indigent persons to receive assistance from appointed counsel has long found voice in our jurisprudence. *See, e.g.*, *Johnson v Zerbst*, 304 U.S. 458 (1938); *Gideon v Wainwright*, 372 U.S. 335 (1963). But the question exactly *when* counsel ought to be appointed has proven less easy to resolve. For a period, some thought the right to receive the assistance of appointed counsel paralleled the jury trial right, which also flows from the Sixth Amendment, and thus pertained only to felony trials or their equivalent. *See Argersinger v. Hamlin*, 407 U.S. 25, 26-27 n.1 (1972). In *Argersinger*, however, the Supreme Court severed any such linkage to the jury trial right and extended the right to receive appointed counsel to misdemeanor trials. Even so, the Court stopped short of reading this right as pertaining to "all criminal proceedings," holding instead that the Sixth Amendment's purposes are served if counsel is appointed in any trial involving a sentence of "actual deprivation of a person's liberty." *Id.* at 40. Whatever else might be said of the importance of receiving the assistance of an attorney, the Court explained that the "guiding hand of counsel" is an indispensable imperative "when one's liberty is in jeopardy." *Id.* at 40 (internal quotation omitted); *see*

*also Gideon*, 372 U.S. at 345 (defending the right to counsel where "the fundamental human rights of life and liberty" are implicated (internal quotation omitted)).

Seven years later, the Court contemplated lifting its mandate that a violation of the Sixth Amendment depends on the sort of sanction imposed. *Scott v. Illinois*, 440 U.S. 367 (1979), presented the Court with a defendant who contended that his misdemeanor conviction and sentence of a fine alone, with no associated jail time, should be vacated. The Court demurred. It did so explaining that there is "considerable doubt that the Sixth Amendment, as originally drafted by the Framers of the Bill of Rights, contemplated any guarantee other than the right of an accused . . . to employ a lawyer to assist in his defense," *id.* at 370, and that, though the right to receive the assistance of appointed counsel was developed through a series of cases before the Court, "constitutional line drawing [became] more difficult," *id.* at 372, especially as the Sixth Amendment was incorporated into the Fourteenth Amendment and applied against the states:

> The range of human conduct regulated by state criminal laws is much broader than that of the federal criminal laws, particularly on the "petty" offense part of the spectrum. As a matter of constitutional adjudication, we are, therefore, less willing to extrapolate an already extended line when, although the general nature of the principle sought to be applied is clear, its precise limits and their ramifications become less so.

*Id.* Emphasizing that *Gideon*, *Argersinger*, and other cases developing the right to receive the assistance of counsel focused on the unique hardships associated

with a sentence of imprisonment and the deprivation of the fundamental right to liberty such a sentence entails, *id.* at 372-73, the Court decided to "delimit" the constitutional line there. "Even were the matter *res nova*," the Court indicated, "the central premise of *Argersinger* – that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment – is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." *Id.*; *see also Glover v. United States*, 531 U.S. 198, 203 (2001) (indicating that a sentence "has Sixth Amendment significance" when, but only when, it involves "any amount of jail time").

Thus went things for nearly a quarter of a century until the Supreme Court confronted a sentence neither fish nor fowl yet highly common – a suspended term of imprisonment. With lower courts split on the question whether such sentences are controlled by *Argersinger* or *Scott*, the Court granted certiorari in a case from the Alabama Supreme Court to resolve the dispute and ultimately concluded that *Argersinger* controlled. Holding that a suspended sentence of imprisonment is more akin to a "sentence of actual imprisonment" than a fine, the Court observed that, "[o]nce the [suspended] prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense," and thus ends up having his or her liberty deprived as a result of an uncounseled conviction – "precisely what the Sixth Amendment, as interpreted by

-7-

*Argersinger* and *Scott*, does not allow." *Alabama v. Shelton*, 535 U.S. 654, 662 (2002). Accordingly, though the Court perhaps extended what qualifies as imprisonment, it confirmed that the presence of a Sixth Amendment violation still turns on the nature of the sentence imposed and, more specifically, on the presence of a term of imprisonment.

Clarifying another critical point of confusion over the years, in *Nichols v. United States*, 511 U.S. 738 (1994), the Supreme Court instructed that "an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction," *id.* at 749, such as under the advisory federal sentencing guidelines that assign criminal history points, and corresponding prison terms, based on the number and seriousness of a defendant's prior sentences. *See also id.* at 746-47 ("[A]n uncounseled conviction valid under *Scott* may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment. Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines . . . do not change the penalty imposed for the earlier conviction.").

B

Mr. Jackson's 1995 misdemeanor sentence involves aspects of both *Argersinger* and *Scott/Nichols*. On the one hand, it includes a conditional prison sentence, something that falls on the "actual imprisonment" side of the ledger

after *Shelton*. On the other hand, it involves the payment of a fine, something that, under *Scott*, poses no Sixth Amendment problems and, pursuant to *Nichols*, may be employed as a sentencing enhancement. Further complicating matters, Mr. Jackson contends, the fine and the conditional prison sentence entwine such that he was subject to potential jail time if he failed to pay the requisite fine. Appellant's Br. at 5.

1.  Unfortunately for Mr. Jackson, we addressed much this same situation in *United States v. Reilley*, 948 F.2d 648 (10th Cir. 1991). There, the defendant, charged in federal court with the misdemeanor of leaving property unattended in a national park, was tried without counsel, convicted, and subjected to a sentence of thirty days' imprisonment and a fine of $500, all of which was suspended on the condition that he pay $100. *Id.* at 650. Rather than quash the conviction or sentence entirely, on appeal we determined that the appropriate remedy in such cases is to strike down the suspended sentence of imprisonment but affirm the conviction and the "remainder of the sentence" – namely, the fine. *Id.* at 654. We took this course on the implicit basis that the remedy ought to fit the right. As defined at least so far by *Argersinger* and *Scott*, and recently reaffirmed by *Shelton*, the Sixth Amendment right at issue protects individuals against being sentenced to a deprivation of liberty without the benefit of counsel; accordingly, we held, the proper remedy was to vacate that portion of the sentence offensive to the Sixth Amendment without doing harm to the defendant's conviction or the

remaining, constitutionally inoffensive, portions of his sentence. To go further, to hold the conviction and fine portion of a sentence infirm, would be to relieve the defendant from *any* consequence of his or her actions despite guidance from *Scott* and *Nichols* and now *Shelton* that uncounseled misdemeanor convictions and non-prison sentences may be given respect and effect consistent with the Sixth Amendment's remedial purposes.

We followed this same course nine years later, in *Shayesteh v. City of South Salt Lake*, 217 F.3d 1281 (10th Cir. 2000). There, much like here, the defendant argued that his fine and jail time were linked and inseparable. In response, we recognized that it may be "impossible to reconstitute the mind of the trial judge, making it impossible to disaggregate" a sentence involving probation and jail time suspended upon payment of a fine, but nonetheless recognized that the Sixth Amendment's purposes, as elucidated by the Supreme Court, were satisfied by vacating the sentence of probation and suspended jail time and retaining as "valid" the underlying conviction and fine. *Id.* at 1285.

The path *Reilley* and *Shayesteh* followed has been traveled by many courts in many jurisdictions and even by *Shelton* itself. In *Shelton*, the Alabama state trial court imposed a thirty day jail sentence but suspended that sentence should the defendant satisfy certain conditions – specifically, two years' unsupervised probation and the payment of court costs, a $500 fine, reparations of $25, and restitution in excess of $500. Expressly following our decision in *Reilley*, the

-10-

Alabama Supreme Court affirmed the conviction and the monetary portions of the sentence but reversed that aspect of the defendant's sentence imposing a suspended jail sentence. *See Ex parte Shelton*, 851 So. 2d 96, 101-02 (Ala. 2000) ("Applying the rationale of *Reilley*, *Argersinger*, and *Scott*, we hold that the defendant in this case was entitled to representation by counsel because he was sentenced to a term of imprisonment, albeit suspended. . . . Having held that a defendant who receives a suspended or probated sentence to imprisonment has a constitutional right to counsel, . . . we affirm Shelton's conviction but reverse that aspect of his sentence imposing 30 days of suspended jail time."). On review, the United States Supreme Court affirmed the Alabama's Supreme Court's decision in all respects – both with respect to its vacatur of the suspended jail term and its decision to uphold the conviction, fine, and restitution. *See Shelton*, 535 U.S. at 658, 673.[3]

Much before *Shelton*, the Second Circuit in *United States v. Ortega*, 94 F.3d 764 (2d Cir. 1996), confronted an uncounseled state court misdemeanor that the government, as here, sought to use as a sentencing enhancement in a subsequent federal proceeding. Also not unlike here, the state sentence at issue involved a variety of elements, including a suspended sentence, probation, as well

_____

[3] The Court's decision in *Shelton* left unresolved only what should happen to the portion of the sentence imposing a term of probation, *see id.* at 673, a question that some courts of appeals have more recently confronted, *see infra* at 12-13.

-11-

as a fine and surcharge, all of which except the fine were subsequently vacated, apparently after the defendant satisfied the monetary portion of his sentence.  The Second Circuit considered, but rejected, the defendant's claim that the state court conviction at issue was invalid, emphasizing that the Sixth Amendment right, as developed by *Argersinger*, *Scott*, and *Nichols*, protects an uncounseled misdemeanor defendant not from a judgment of conviction but from any sentence involving the deprivation of his or her liberty.  *Id.* at 769.  The court then proceeded to cite *Reilley* and explain that the "appropriate remedy" is "vacatur of the invalid portion of the sentence, and not reversal of the conviction itself"; on this basis, it held, the defendant's "conviction and the monetary portion of his sentence were clearly valid under *Scott*, and were properly considered in his criminal history pursuant to *Nichols*." *Id.*  The Eighth Circuit has reached much this same conclusion, *see United States v. White*, 529 F.2d 1390, 1394 n.4 (8th Cir. 1976) ("the *Argersinger* doctrine relieves an uncounseled defendant convicted for a misdemeanor only from the penalty of incarceration," (internal quotation omitted)), as has the Third Circuit, *see United States v. Moskovits*, 86 F.3d 1303, 1309 (3d Cir. 1996).

After the Supreme Court's decision in *Shelton*, moreover, the Fifth Circuit had occasion to consider whether, consistent with that decision, *see supra* at note 3, an uncounseled conviction resulting in a stand alone sentence of probation for illegally reentering this country may be employed as a sentencing enhancement in

-12-

a subsequent case, even though a violation of the terms of the original probationary sentence might result in a prison term. Though the issue is of course one we need not decide today, the Fifth Circuit's reasoning illustrates the continuing uniformity of circuit views regarding the focus of the right and remedy afforded by the Sixth Amendment. The Fifth Circuit explained that the imposition of probation itself, without more, does not trigger the Sixth Amendment because, as it put it, "[i]f a defendant receives only a sentence of probation, he is sentenced to community release with conditions; he does not receive a sentence of imprisonment." *United States v. Perez-Macias*, 335 F.3d 421, 426-27 (5th Cir. 2003) (King, C.J.). Acknowledging that the revocation of probation, like the suspended sentence at issue in *Shelton*, can sometimes lead to imprisonment, the court emphasized that a defendant in such a situation may receive only a sentence "that was originally available at sentencing," thus intimating, if not holding, that, if a jail sentence would have been unlawful under the Sixth Amendment at the outset, so will it be if invoked in a probation revocation hearing. *Id.* at 427. Yet, while a sentence of probation might later become invalid, the court held it is not so until and unless it, in conformity with *Argersinger* and *Shelton*, results in a sentence of actual imprisonment.[4]

---

[4] *See also United States v Rios-Cruz*, 376 F.3d 303, 304-05 (5th Cir. 2004) (to similar effect); *United States v. Foster*, 904 F.2d 20, 21 (9th Cir. 1990) (holding that the remedy under *Argersinger* is that "when probation is revoked,
(continued...)

2.     In addition to the wall of precedent blocking its path, Mr. Jackson's argument also neglects to take account of factors unique to the federal sentencing process that at least mitigate concerns about the reliance on prior uncounseled misdemeanor convictions and misdemeanor sentences in subsequent sentencing proceedings.

In the first place, the Sentencing Commission was well aware of the prevalence of uncounseled misdemeanor convictions and sought to modulate their effect on federal sentences within the mechanisms of the Guidelines. While imposing more criminal history points – and allowing them to accumulate without limitation – for more serious offenses, the Guidelines impose but a single point for prior sentences resulting in less than sixty days' imprisonment and cap the number of such sentences that may be counted at four. *See* USSG §4A1.1(c); *see also* USSG § 4A1.2 Application Notes ("Background: Prior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed."); USSG § 4A1.1 Application Notes ("Subdivisions (a), (b), and (c) of §4A1.1 distinguish confinement sentences longer than one year and one month, shorter

_____

[4](...continued)
the case reverts to its status at the time probation was granted[, and, s]ince imprisonment could not have been imposed on Foster at the conclusion of his trial, imprisonment could not be imposed on Foster following revocation of his probation" (internal quotations and citations omitted)).

-14-

confinement sentences of at least sixty days, and all other sentences, such as confinement sentences of less than sixty days, probation, fines, and residency in a halfway house.").[5]

Further, of course, under the Guidelines themselves the district court remains free to find that a defendant's criminal history score incorporating an uncounseled misdemeanor sentence "over-represents the seriousness of [his or her] criminal history or the likelihood that the defendant will commit further crimes" and, on that basis, depart from the Guidelines' suggested sentencing range as the court sees fit. USSG § 4A1.3(b)(1). As Justice Souter observed in *Nichols*, "[b]ecause the Guidelines allow a defendant to rebut the negative implication to which a prior uncounseled conviction gives rise, they do not ignore the risk of unreliability associated with such a conviction." 511 U.S. at 752 (Souter, J., concurring). Finally, along these same lines, after *Booker, et al.*, the Guidelines themselves are of course no longer applied by rote and a district court is free, in appropriate circumstances, to issue an entirely different sentence based on the factors delineated by Congress in 18 U.S.C. § 3553(a).

3.    Mr. Jackson responds to all this by directing us to our decision in *United States v. Cousins*, 455 F.3d 1116 (10th Cir. 2006). There, a state court

---

[5] The parties speak in terms of using a "conviction" to calculate Mr. Jackson's criminal history points; however, as noted above, USSG § 4A1.1, though not 18 U.S.C. § 3553(a), provides that criminal history should be calculated based on "sentences."

convicted Mr. Cousins in 1996 for receiving stolen goods and sentenced him to a $500 fine or, alternatively, 30 days in jail. The court in *Cousins* noted that the case was "analogous to *Shelton* in the sense that the sentence imposed by the [state] court was essentially a suspended [jail] sentence." *Id.* at 1126. Under *Shelton*'s holding that suspended sentences of imprisonment are as problematic as those immediately imposed, the court found a Sixth Amendment violation and, from there, proceeded to hold that "having concluded that the South Carolina conviction violated Kurt's Sixth Amendment rights, we must also conclude that it was error for the district court to use this conviction in calculating Kurt's criminal history category." *Id.* at 1127. Mr. Jackson seeks to read into this a suggestion that any time an uncounseled misdemeanor sentence intertwines fines with jail time (or suspended jail time) we must vacate the entire sentence.

Our decision cannot bear the weight he seeks to impose upon it. In *Cousins*, we rejected the government's argument "that it is improper for [a defendant] to challenge the constitutionality of his prior *state* court conviction in a *federal* sentencing proceeding" because a defendant should lodge such a challenge in the state court system instead. *Id.* at 1124-25 (emphasis added). We held that a defendant "may challenge the constitutionality of his state court conviction on Sixth Amendment grounds in a federal sentencing proceeding where the purpose of the challenge is to establish eligibility for safety valve consideration under § 3553(f)." *Id.* at 1125. The continuing vitality of the

-16-

defendant's uncounseled state conviction and fine and the propriety of their use in subsequent federal sentencing proceedings simply was not at issue in, and thus resolved by, *Cousins*. Indeed, the government in *Cousins* failed to argue, as it has here, that an uncounseled state misdemeanor conviction and associated fine may be considered by a federal sentencing court in a manner consistent with the Sixth Amendment's guarantee of the right to counsel. *See generally id.* at 1125-27 (arguing merely that *Shelton* did not apply retroactively on appeal).

To read *Cousins* as Mr. Jackson suggests would require us to attribute to it a holding on a legal question on which the parties never engaged, and it would require us to overlook the longstanding rule that the government's failure to raise an argument in one case does not preclude its consideration by courts in future cases. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984). Even more problematically, it would require us to overrule our prior decisions in *Reilley* and *Shayesteh*, something we, as a panel of this court, are powerless to do; disregard the Supreme Court's guidance in *Argersinger*, *Scott*, *Nichols*, and *Shelton*, something we are never at liberty to do; shrug off the Guidelines' nuanced response to the concerns associated with reliance on uncounseled misdemeanors; and bypass the uniform teaching of our sister circuits which have recognized, even in the presence of a prison sentence violating the Sixth Amendment, the persistent vitality of a misdemeanor conviction as well as any non-imprisonment

sentencing terms.  Such consequences, all directly flowing from Mr. Jackson's position, illustrate vividly why we decline to adopt his argument as our own.

*    *    *

The right to receive the assistance of appointed counsel, as developed to date, extends to cases involving a sentence of actual imprisonment, and the remedy commensurate to that right extends to the invalidation of any such sentence imposed when the right to counsel was not afforded.  Accordingly, while obliged to disregard Mr. Jackson's 1995 state misdemeanor jail sentence, the district court was free to consider the conviction itself and accompanying fine in assessing an appropriately tailored sentence in this case.

*Affirmed.*