[Cite as *State v. Rice*, 2021-Ohio-988.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 20CAA010002 |
| | : | |
| JOSEPH RICE | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court
of Common Pleas, Case No.
19CRI020105


JUDGMENT:     AFFIRMED


DATE OF JUDGMENT ENTRY:     March 23, 2021


APPEARANCES:

For Plaintiff-Appellee:

MELISSA A. SCHIFFEL
DELAWARE CO. PROSECUTOR
PAYTON ELIZABETH THOMPSON
145 N. Union St., 3rd Floor
Delaware, OH 43015

For Defendant-Appellant:

DARREN L. MEADE
2602 Oakstone Drive
Columbus, OH 43231

*Delaney, P.J.*

{¶1} Appellant Joseph Rice appeals from the December 12, 2019 Judgment Entry of Sentence of Community Control of the Delaware County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The facts underlying the instant appeal are not in dispute. The following statement of fact is taken from the "Agreed Stipulation of Parties Governing Trial" filed October 15, 2019.

*The instant case: the parties jointly stipulate to facts*

{¶3} Appellant was indicted on February 15, 2019 for the offense of Public Indecency, pursuant to R.C. 2907.09(A)(3), a fifth-degree felony.

{¶4} On or about the 4th day of December, 2017 and in Delaware County, Ohio, [appellant], under circumstances in which his conduct was likely to be viewed and affront others who are in his physical proximity and who are not members of his household, one of whom is a minor, recklessly engaged in conduct that to an ordinary observer would appear to be sexual conduct or masturbation.

{¶5} Specifically, the parties stipulate:

On December 4, 2017, [appellant] was parked on the side of Sierra Drive in Westerville, Delaware County, Ohio at approximately 1:50 p.m. in his work-issued mail truck, with the driver's side door open. The neighborhood containing Sierra Drive is highly populated with approximately 35 houses on that Sierra Drive alone.

At the same time, [Mother Doe] and [Child Doe, age 3] were on a walk on a wooded trail next to the area where [appellant] was parked. [Mother and Child Doe] did not know [appellant] prior to this day and had previously had no interaction with him. [Mother and Child Doe] are not household members of [appellant].

As [Mother and Child Doe] approached the parked vehicle, [Child Doe] stated "Mail truck!" to [Mother Doe].

As [Mother and Child Doe] walked past [appellant], he was approximately 3-5 feet away from [Mother and Child Doe], seated in his vehicle with his pants around his ankles. He had his cell phone in his left hand and his penis in his right hand.

[Mother Doe], an ordinary observer, immediately believed that [appellant] was masturbating and called her husband, [John Doe], to alert him. She was very upset and frantic during the phone call placed to [John Doe] and was concerned about getting her daughter home as quickly as possible. His conduct was in fact viewed by and affronted [Mother and Child Doe].

[John Doe] exited his house and waited approximately 10-15 seconds until he observed [appellant] in his mail truck turn right from Sierra Drive onto Shiloh Spring Drive. As [appellant] approached [John Doe], [John Doe] began filming his interaction with [appellant], who confirmed that [Mother and Child Doe] had seen him in his work

truck in a compromising position on Sierra Drive and apologized for the encounter.

* * * *.

{¶6} Appellant was charged by indictment with one count of public indecency pursuant to R.C. 2907.09(A)(3), a felony of the fifth degree. The indictment noted appellant was previously convicted of or pleaded guilty to two or more violations of this section.

{¶7} Appellant entered a plea of not guilty and filed, e.g., a motion to exclude evidence of uncounseled prior convictions. The indictment referenced two prior convictions: 1) Delaware County Municipal Court case number 2002 CRB 1683 and 2) Delaware County Municipal Court case number 2006 CRB 1009 (referred to henceforth as the "2002" and "2006" convictions). Appellant attached dockets from each case indicating he entered pleas of no contest at arraignment in both cases.

{¶8} Appellant also filed a "Motion in Limine to Exclude Evidence of Facts Surrounding Prior Convictions Under Evid.R. 404(B) and 403(A)." The trial court granted the motion in limine, ruling the facts surrounding appellant's prior convictions are inadmissible at trial unless appellant opens the door to admission of those facts.

{¶9} On October 10, 2019, an evidentiary hearing was held on appellant's motion to exclude evidence of the prior convictions. The trial court opined at the beginning of the hearing that it was appellant's burden to make a prima-facie showing that his prior convictions were uncounseled, which appellee could then rebut. Appellant argued an affidavit attached to his motion created a prima-facie case of uncounseled prior convictions. We note this affidavit is not in the record before us. At the hearing appellee

stated the prosecutor's office was served with the affidavit, and the affidavit was apparently presented to the trial court. The trial court read the pertinent portion of the affidavit as follows:

> * * * *.

> I do not recall what, if any, forms or other acknowledgments of my legal rights, including my right to have an attorney, I may have reviewed and signed in either case. I do not recall whether the Court in either case informed me of my right to be represented by counsel. I cannot state that I knowingly, intelligently, and voluntarily waived my rights to have legal counsel represent me in either of the aforementioned municipal court cases.

> * * * *.

> T. 10/10/19, 15.

{¶10} Appellee thereupon offered State's Exhibit 1, a DVD containing audio and/or video of both no-contest pleas.

*The 2002 conviction*

{¶11} The 2002 no-contest plea was played and transcribed into the record. In the recording, a trial court explained the purpose of traffic and misdemeanor arraignments, that anything the defendant said could be held against them; the right to see the charging document and to have the charge read and explained to them; the right to a jury trial; and the function and purpose of a recognizance bond. The trial court explained the defendants have a right to an attorney of their choice and that an attorney would be appointed to represent them if they could not afford to hire an attorney. T.

10/10/19, 21. The trial court explained the options of entering pleas before the court that day, including that defendants could speak to an attorney prior to entering any plea and the arraignment would be rescheduled.

{¶12} The trial court then explained the meaning of "not guilty" and "no contest" pleas. T. 10/10/19, 25. The trial court explained the pleas of "guilty" and "not guilty by reason of insanity." The trial court explained that if the defendant chose to enter a plea of "no contest" or "guilty," he or she would be given a Waiver of Rights with Plea form. The trial court explained that either of those pleas at arraignment would effectively give up the defendant's right to a lawyer because the case would be completed. Therefore, the court advised, if the defendant wanted an opportunity to speak with a lawyer, he or she should enter a plea of "not guilty" or tell the court that the defendant wants to continue the arraignment for a week to consult an attorney.

{¶13} Finally, the trial court explained the additional consequences of pleas for individuals who are not citizens of the United States; who plead guilty or no contest to a moving violation requiring points to be assessed against their driver's license; and who plead guilty to an enhanceable offense, meaning that a future offense would be of a higher degree of penalty based upon the plea.

{¶14} The recording was then forwarded to appellant's arraignment. The charge of public indecency was read to him and he was advised the offense is a fourth-degree misdemeanor. Appellant stated he understood the charge and had received a copy of the ticket. The following conversation took place:

* * * *.

JUDGE SUNDERMAN: Now, do you have a lawyer or do you plan on hiring a lawyer to represent you in this case?

[APPELLANT]: Yes, sir.

JUDGE SUNDERMAN: You don't want me to represent a lawyer to represent you?

[APPELLANT]: No, sir.

JUDGE SUNDERMAN: All right. Are you prepared to enter a plea then?

[APPELLANT]: No contest.

JUDGE SUNDERMAN: All right. Fill out the form we got there. Circle no contest, indicate that you're entering that plea, and then sign that form and date it.

Were you in court this morning when I went over everyone's rights?

[APPELLANT]: Yes, sir, I was.

JUDGE SUNDERMAN: And did you read and review this document, this Waiver of Rights with Plea form?

[APPELLANT]: Yes, sir.

JUDGE SUNDERMAN: You understand all the rights that are in that document?

[APPELLANT]: Yes, sir.

JUDGE SUNDERMAN: And you understand what you're charged with, the maximum possible penalties that we just discussed?

[APPELLANT]: Yes, I do.

JUDGE SUNDERMAN: And you understand what the effect of a no contest plea is, which we talked about earlier?

[APPELLANT]: Yes, sir.

JUDGE SUNDERMAN: You understand that by entering that no contest plea at this point, you're giving up your right to be represented by a lawyer, either one that you could hire or one that we would appoint for you; and you're giving up your right to a trial?

[APPELLANT]: Yes, sir.

JUDGE SUNDERMAN: Which includes giving up your right to cross-examine opposing witnesses, call your own witnesses, take the stand in your own defense, and requiring the prosecution to prove you guilty beyond a reasonable doubt at trial where you can't be forced to take the witness stand and testify against yourself.

Do you understand those matters?

[APPELLANT]: Yes, I do.

JUDGE SUNDERMAN: Are you under the influence of any medications or substance this morning?

[APPELLANT]: No, sir.

JUDGE SUNDERMAN: All right. The Court will then accept your plea as being knowingly, intelligently, and voluntarily made. [Prosecutor], do you have a statement of facts here?

[PROSECUTOR]: Your Honor, this occurred on Saturday, August 5 at approximately 3:17 p.m. Officer Yates {phonetic} was on a foot patrol in a wooded area near the swim cove of Lewis Center, Delaware County when he observed two male subjects laying on the ground. [Appellant] was lying on the ground, had only a shirt on. Mr. Robert Boyak {phonetic} was fully clothed. Mr. Boyak was laying with his face in the lap of [appellant], performing oral sex on him.

Officer Yates was in full uniform and didn't try to hide or conceal himself as he walked down the path, and there were other park visitors in the general area where this occurred.

We would request, by way of sentence, Your Honor, probably 30 days all suspended on certain conditions. Mainly those would be payment of fines and costs, no same or similar or serious criminal or traffic. But the main condition of probation we would ask for is a three-year stay-away order from parks at least in Delaware County.

JUDGE SUNDERMAN: All right. [Appellant], is there anything you want to say to me?

[APPELLANT]: No, nothing to add.

JUDGE SUNDERMAN: All right. Well, you understand that this is a public place. I'm probably not telling you anything you haven't already thought about or you don't already know. It's a public place. What people do in private is a whole other matter. What they do in public is different. There are all kinds of people that visit that park, as you well know, young, old, and every age in between; and, obviously, this is conduct that can't be tolerated.

I agree with the prosecutor's recommendation in this particular case. You've not—From what I hear, you've never been in trouble before?

[APPELLANT]: No, sir.

JUDGE SUNDERMAN: You know, this is the kind of offense where, as I said, whatever you do in the privacy of your home or wherever is a different matter.

I'm going to sentence you to 30 days in jail. I will suspend all 30 of those days. I'm going to place you on probation for a period of one year.

You're to comply with all reasonable terms that the probation department deems appropriate. I am going to impose a three-year stay-away order from any of the public parks in Delaware County. I am going to fine you $150 in court costs, basically, for the deterrence of this offense and the correction of you.

Can that be paid today, or do you need time?

[APPELLANT]: Depending on the form of payment accepted, yes.

JUDGE SUNDERMAN: They will take a credit card. Is that what you're thinking?

[APPELLANT]: Yes.

* * * *.

JUDGE SUNDERMAN: All right. And you understand what I'm saying when it's a three-year stay-away order from all public parks in Delaware County. That would not just include Alum Creek, but any of the other public parks, whether they're State or City or County. Do you understand that?

[APPELLANT]: Yes.

JUDGE SUNDERMAN: All right. When you leave here this morning, then, you'll meet with the probation department; and they'll explain to you further any of the—any of the specific details of the terms of your probation.

Any other questions?

[APPELLANT]: No, sir.

JUDGE SUNDERMAN: All right, thank you.

And thereupon the audio/visual file was stopped.

* * * *.

T. 10/10/19, 31-36.

{¶15} Appellee submitted a certified copy of a "Waiver of Rights with Plea" form, signed by appellant, stating in pertinent part:

I have been charged with an offense in the Delaware Municipal Court.

I understand my rights as follows:

I have the right to obtain an attorney even if I intend to plead guilty, and I have a right to a reasonable continuance (delay) in the proceedings to secure an attorney.

If I am unable to afford an attorney, and my offense may subject me to a jail penalty the Court will appoint an attorney to represent me without cost to myself.

I understand that I am charged with an offense for which if I plead guilty or no contest, I may be sentenced to jail as well as payment of a fine.  * * * *.

* * * *.

I understand that I may plead NOT GUILTY, GUILTY, or NO CONTEST, and that the effect of such a plea is as follows:

* * * *.

The plea of NO CONTEST is not an admission of guilt, but is an admission of the truth of the facts alleged in the complaint.  Such plea of admission, however, shall not be used against me in any subsequent civil or criminal proceedings. My case would be heard today.

* * * *.

I HAVE READ THIS STATEMENT OF RIGHTS AND I UNDERSTAND WHAT THEY ARE. I KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY GIVE UP MY RIGHTS TO EMPLOY AN ATTORNEY, OR TO HAVE ONE APPOINTED FOR ME. I ALSO GIVE UP MY OTHER RIGHTS SET FORTH ABOVE, INCLUDING MY RIGHT TO HAVE MY RIGHTS EXPLAINED TO ME IN OPEN COURT AND TO HAVE THE EXPLANATION RECORDED.

**PLEA**

I understand the charge(s) against me and the possible maximum penalties. Having knowingly, intelligently, and voluntarily waived my rights, I plead NO CONTEST to the charge(s) against me. I do understand that I will be sentenced immediately.

/s/ Joseph E. Rice

(Emphasis in original).

{¶16} Appellee entered a certified copy of the Judgment Entry and/or Report and Sentencing Recommendation of the Delaware Municipal Court dated August 2, 2002. The entry states in pertinent part: "Defendant was advised of charge(s) against him and possible maximum penalty. Defendant was addressed personally and the Court determined that a waiver of all rights was made knowingly, intelligently, and voluntarily. Plea accepted. Finding of Guilty, opportunity to speak was given before sentence. Defendant waived counsel."

*The 2006 conviction*

{¶17} Appellee next played a recording of appellant's 2006 no-contest plea and conviction, which was transcribed into the record of the instant case.

{¶18} Judge Sunderman again explained the statutory and constitutional rights afforded to the individuals before him for misdemeanor and traffic arraignments. T. 10/10/19, 39. In the recording, a trial court explained the purpose of traffic and misdemeanor arraignments, that anything the defendant said could be held against them; the right to see the charging document and to have the charge read and explained to them; the right to a jury trial; and the function and purpose of a recognizance bond. The trial court explained the defendants have a right to an attorney of their choice and that an attorney would be appointed to represent them if they could not afford to hire an attorney. T. 10/10/19, 40. The trial court explained the options of entering pleas before the court that day, including that defendants could speak to an attorney prior to entering any plea and the arraignment would be rescheduled.

{¶19} The trial court then explained the meaning of "not guilty" and "no contest" pleas. T. 10/10/19, 42. The trial court explained the pleas of "guilty" and "not guilty by reason of insanity." T. 10/10/19, 44. The trial court explained that if the defendant chose to enter a plea of "no contest" or "guilty," he or she would be given a Waiver of Rights with Plea form. The trial court explained that either of those pleas at arraignment would effectively give up the defendant's right to a lawyer because the case would be completed. Therefore, the court advised, if the defendant wanted an opportunity to speak with a lawyer, he or she should enter a plea of "not guilty" or tell the court that the defendant wants to continue the arraignment for a week to consult an attorney.

{¶20} Finally, the trial court explained the additional consequences of pleas for individuals who are not citizens of the United States; who plead guilty or no contest to a moving violation requiring points to be assessed against their driver's license. T. 10/10/19, 47-49.

{¶21} The following conversation took place between the (misdemeanor) trial court and appellant:

JUDGE SUNDERMAN: Is Mr. Rice here?

Good morning, Mr. Rice.

Mr. Rice, I have before me a charge of—let me check something—a charge of public indecency.

That's what I wanted to check. There's a charge of public indecency here. It alleges that on or about May the 11th, 2006, at about 4:08 p.m., and it says that this happened somewhere in the Alum Creek State Park area, that you recklessly or under circumstances in which your conduct was likely to be viewed by and affront others, not the members of your household, exposed your private parts or engaged in masturbation while in the Lewis Center picnic area at Alum Creek State Park. It also alleges that there was a prior conviction for the same offense on August 12th of 2002 here in Delaware Municipal Court.

Because of the prior conviction, it elevates one degree to a misdemeanor of the third degree. It carries up to 60 days in jail, up to a $500 fine or both.

So do you understand the charge and the full range of possible penalties?

[APPELLANT]: Yes, sir, I do.

JUDGE SUNDERMAN: Do you have a lawyer, or are you planning on hiring a lawyer to represent you in this case?

[APPELLANT]: No, sir.

JUDGE SUNDERMAN: Do you want me to appoint a lawyer to represent you?

[APPELLANT]: No, sir.

JUDGE SUNDERMAN: And are you prepared to enter a plea here this morning?

[APPELLANT]: Yes, sir.

JUDGE SUNDERMAN: What plea do you wish to enter?

[APPELLANT]: No contest.

JUDGE SUNDERMAN: All right. If you'll take the form that you have circled no contest, sign it, date it.

[APPELLANT]: Do I need to complete the top of that, as well?

JUDGE SUNDERMAN: Write in your name you mean and--

[APPELLANT]: Yes.

JUDGE SUNDERMAN: Yes. Write your name on the—
Now Mr. Rice, were you in court when I went through all these rights with everybody this morning?

[APPELLANT]: Yes, sir, I was.

JUDGE SUNDERMAN:  Did you understand all that?

[APPELLANT]:  Yes, sir.

JUDGE SUNDERMAN:  And did you read and understand this Waiver of Rights with Plea form that you signed here this morning?

[APPELLANT]:  Yes, sir.

JUDGE SUNDERMAN:  And do you understand the charge, the full range of possible penalties as I just went through those?

[APPELLANT]:  Yes, sir.

JUDGE SUNDERMAN:  You understand the effect of a no contest plea as I explained that earlier?

[APPELLANT]:  Yes, sir.

JUDGE SUNDERMAN:  Are you under the influence of any drug, alcohol, medication here this morning?

[APPELLANT]:  No, sir.

JUDGE SUNDERMAN:  You're a U.S. citizen?

[APPELLANT]:  Yes, sir.

JUDGE SUNDERMAN: You understand that by entering this plea this morning, you're giving up your right to be represented by a lawyer, whether it would be to a judge—or a lawyer, whether one you would hire or one that I would appoint for you? Do you understand that?

[APPELLANT]:  Yes, sir.

JUDGE SUNDERMAN: [Inaudible] your own free will?

[APPELLANT]:  Yes, sir.

JUDGE SUNDERMAN:  All right.  I will accept your plea.

Officer, do you have a report on this case?

[UNIDENTIFIED SPEAKER]:  Judge, yes.  May 11th, 4 p.m., the ODNR was conducting a plainclothes detail surveillance at the park. This is Alum Creek State Park. This is the latrine in area number two.  They had observed this gentleman get out of his car and run into the restroom. As a marked patrol car went by, he indicated—this gentleman indicated he did not want the officer to be suspicious in the patrol car.

The undercover officer walked into the woods with [appellant]. [Appellant] stated, "Let's walk a little further so that we can view the parking lot, and no one will sneak up on us."

[Appellant] then says—pulled his shorts down around his knees, exposed his private parts, and touched them.

The officer then identified himself and arrested him for public indecency.

[Appellant] advised that he had been arrested a few years earlier for the same thing. He indicated [appellant] was cooperative and courteous throughout this entire incident.

It does show a conviction, Judge, August 12th, '02, 30 days suspended, a fine of $150, one year probation. He was required to stay away from the parks for three years, which ended in '05.

He was released after a successful probation of one year in April of 2003.

JUDGE SUNDERMAN: All right. Based on the statement of facts, then, I'll enter a finding of guilty.

[Appellant], you were here, what, three—I guess three and a half years ago, almost four years ago?

[APPELLANT]:  Yes, sir.

JUDGE SUNDERMAN:  And so you know what you're dealing with here.  Is there anything you want to tell me?

And this is a public park.  I'm stating the obvious here, and there's obvious reasons why this law exists particularly as it applies to public parks and public places.

[APPELLANT]:  I guess the only thing I have to say at this point is I initially did just go to use the restroom and then apparently got stupid after that.  I would ask the Court, in judgment, that I do have a family to support, and my job doesn't allow for leave time for loss of work at this point.  That's all.

JUDGE SUNDERMAN: You basically work Monday through Friday?

[APPELLANT]:  I actually work six days, Monday through Saturday.

JUDGE SUNDERMAN: All right. And I assume you have some holidays, right, or vacation time?

[APPELLANT]: I guess some holidays, but I don't accrue vacation at this time because I'm not at the level to accrue vacation.

JUDGE SUNDERMAN: All right. Well, you're going to have to figure this out, because, you know, you got convicted once. You didn't get placed in jail. You got placed on probation. And here you are back again for the same thing.

Number one, I'm going to fine you $500 plus court costs. I'm going to ask you can you pay that today or do you need time?

[APPELLANT]: I can pay that today.

JUDGE SUNDERMAN: All right. I'm going to impose six days in jail. Those could be served on two consecutive weekends. You're going to have to figure out with your job how you're going to do that. I really don't even have to take that into account, but I will. I'm not interested.

You're married?

[APPELLANT]: Yes, sir.

JUDGE SUNDERMAN: How many children?

[APPELLANT]: One.

* * * *.

JUDGE SUNDERMAN: Did you complete any counseling through what's called the STOP program the first time that this occurred?

[APPELLANT]: No, sir.

JUDGE SUNDERMAN: All right. Probation will tell you in more detail what that's all about, but it's a program that's geared specifically for these instances.

I'm going to place you on community control for two years under the condition that you pay your fines and costs, you conduct yourself in a law abiding manner, you complete the STOP program, that you not enter onto any public park property for a period of two years.

If you violate any of these terms or conditions, several things can happen. I can lengthen your community control to five years, I can impose additional restrictions, or I can impose jail up to 60 days with a credit now of 54 days in addition to what you're serving now.

* * * *.

T. 10/10/19, 47-58.

{¶22} Appellee entered a certified copy of the complaint in the 2006 case, which notes, e.g., appellant was previously convicted of public indecency in 2002. Appellant also entered a certified copy of the "Judgment Entry/Magistrate's Decision" dated May 22, 2006, stating appellant was advised of the charge and the effect of pleas pursuant to Crim.R. 11 and the right to counsel pursuant to Crim.R. 44. Appellant entered a plea of no contest and was found guilty as charged.

*Bench trial in the instant case*

{¶23} Appellant waived his right to trial by jury and the matter proceeded to bench trial. The parties stipulated to the facts of the instant case as noted supra. Appellee again

presented the evidence of the videotape of appellant's 2002 and 2006 pleas and convictions for public indecency.

{¶24} At the conclusion of appellee's evidence, appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A). Appellant argued the 2002 and 2006 convictions could not be used to elevate the degree of the instant offense because there was no written waiver of the right to counsel and appellant was not told a conviction could enhance the degree of a subsequent offense. Appellant further argued the 2002 conviction was invalid altogether because he was not found guilty upon the record. Finally, appellant argued appellee failed to present evidence that appellant was the "Joseph Rice" convicted in the 2002 and 2006 cases. The trial court overruled the motion.

{¶25} The trial court then noted as the finder of fact that the "Joseph Rice" on the plea videos from 2002 and 2006 was the same defendant before him in the courtroom. The trial court found appellant guilty as charged upon one count of public indecency as a felony of the fifth degree. Sentencing was deferred pending preparation of a P.S.I.

{¶26} Appellant appeared for sentencing on November 27, 2019. The trial court imposed a 5-year term of community control which includes, e.g., a 30-day jail term.

{¶27} Appellant now appeals from the trial court's judgment entry of conviction and sentence.

{¶28} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶29} "I. EVIDENCE OF APPELLANT'S PRIOR 2002 CONVICTION WAS IMPROPERLY ADMITTED AS EVIDENCE AGAINST HIM WHEN THE TRIAL COURT IN SAID 2002 CASE FAILED TO FIND APPELLANT GUILTY ON THE RECORD AFTER

APPELLANT ENTERED A PLEA OF NO CONTEST, THUS RENDERING THE PRIOR CONVICTION VOID FOR PURPOSES OF ENHANCING THE CHARGE IN THE PRESENT CASE TO A FIFTH-DEGREE FELONY."

{¶30} "II. THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT IMPROPERLY FAILED TO EXCLUDE EVIDENCE OF APPELLANT'S PRIOR UNCOUNSELED MISDEMEANOR CONVICTIONS IN ORDER TO ENHANCE THE CHARGE IN THE PRESENT CASE TO A FIFTH-DEGREE FELONY."

{¶31} "III. THE TRIAL COURT'S DETERMINATION FINDING NO REASONABLE DOUBT IN IDENTIFYING APPELLANT AS THE SAME "JOSEPH RICE" WHO ENTERED A PLEA IN THE PRIOR 2002 AND 2006 MUNICIPAL COURT CASES WAS BOTH CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, WHEN THE EVIDENCE OF SUCH IDENTIFICATION WAS SOLELY BASED UPON REVIEWING VIDEOS OF MUNICIPAL COURT PLEA HEARINGS RECORDED SEVENTEEN (17) AND THIRTEEN (13) YEARS EARLIER RESPECTIVELY, AND COMPARING SUCH DATED MATERIALS TO APPELLANT'S APPEARANCE IN THE COURTROOM MANY YEARS LATER."

{¶32} "IV. APPELLANT'S CONVICTION WAS UNSUPPORTED BY SUFFICIENT EVIDENCE AS A MATTER OF LAW FOR THE REASONS STATED IN THE FIRST THROUGH THIRD ASSIGNMENTS OF ERROR, AND THE TRIAL COURT ACCORDINGLY ERRED IN DENYING APPELLANT'S RULE 29 MOTION."

## ANALYSIS

### I., II., III., IV.

{¶33} Appellant's four assignments of error are related and will be addressed together. Appellant argues the 2002 and 2006 convictions are insufficient to elevate the offense in the instant case to a felony of the fifth degree. We disagree.

{¶34} Appellant was found guilty upon one count of public indecency pursuant to R.C. 2907.09(A)(3), which states: no person shall recklessly * * * under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household, engage in conduct that to an ordinary observer would appear to be sexual conduct or masturbation. Further, pursuant to R.C. 2907.09(C)(3), "* * * [i]lf the offender previously has been convicted of or pleaded guilty to two or more violations of this section, a violation of division (A)(2) or (3) of this section is a misdemeanor of the first degree or, if any person who was likely to view and be affronted by the offender's conduct was a minor, a felony of the fifth degree."

{¶35} Appellant does not argue he was improperly convicted of public indecency; instead, he argues the 2002 and 2006 convictions could not be used to elevate the instant offense to a felony of the fifth degree.

*The 2002 conviction is not void for enhancement purposes*

{¶36} First, appellant argues the 2002 conviction is void for enhancement purposes because the trial court failed to find appellant guilty on the record following his plea of no contest. "A trial court's obligations in accepting a plea depend upon the level of offense to which the defendant is pleading." *State v. Smith*, 9th Dist. Medina No.

14CA0122–M, 2016-Ohio-3496, 2016 WL 3403006, ¶ 6. If a misdemeanor case involves a serious offense, the court must address the defendant personally, inform her of the effect of her plea, determine that she is making the plea voluntarily, and, if she is unrepresented, address her right to counsel. Crim.R. 11(D). If a misdemeanor case involves a petty offense, the plain language of Crim.R. 11(E) requires a trial court to do one thing before accepting a plea: inform the defendant of the effect of the plea. *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, paragraph one of the syllabus. To satisfy the requirement of "informing a defendant of the effect of a plea," the trial court must inform the defendant of the appropriate language under Crim.R. 11(B)(2), i.e, the court was required to inform appellant that a plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding. *Jones*, supra, 2007-Ohio-6093 at ¶ 25.

{¶37} A misdemeanor is a "serious offense" if "the penalty prescribed by law includes confinement for more than six months." Crim.R. 2(C). Otherwise, a misdemeanor is a "petty offense." *See* Crim.R. 2(D). The offense at issue in the 2002 case was public indecency pursuant to R.C. 2907.09(A)(2), a misdemeanor of the fourth degree. A misdemeanor of the fourth degree is punishable by a jail term of not more than thirty days. R.C. 2929.24(A)(4). The offense was therefore a "petty offense" and the trial court was required only to advise appellant of the effect of his no-contest plea. The trial court stated the following regarding the effect of a no-contest plea:

* * * *.

You can enter a plea of no contest. A plea of no contest is not an admission of your guilt, and the plea itself can't be used against you in later civil or criminal proceedings. But when you plead no contest, it is an admission of the truth of what's in the complaint.

\* \* \* \*.

T. 10/10/19, 24.

{¶38} The record reflects the trial court complied with Crim.R. 11. We disagree with appellant's premise that because the court did not pronounce the word "guilty" on the record at the hearing, his plea to a misdemeanor petty offense cannot be used to enhance the penalty level of the offense in the instant case. We find the context of the entire 2002 plea colloquy, including the resulting judgment entry of sentence and conviction and appellant's executed waiver of his rights, cannot be construed as anything less than a finding of guilt. The first assignment of error is overruled.

*The 2002 and 2006 convictions are not constitutionally infirm*

{¶39} In his second assignment of error, appellant argues the trial court should have excluded the prior convictions because they were uncounseled.

{¶40} R.C. 2945.75(B)(1) and (3) state:

(1) Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction.

\* \* \* \*

(3) If the defendant claims a constitutional defect in any prior conviction, the defendant has the burden of proving the defect by a preponderance of the evidence.

{¶41} The burden rests with appellant to make a prima-facie showing of a constitutional deficiency. In *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, at paragraph one of the syllabus, the Ohio Supreme Court held that "[f]or purposes of penalty enhancement in later convictions * * * when the defendant presents a prima facie showing that prior convictions were unconstitutional because they were uncounseled and resulted in confinement, the burden shifts to the state to prove that the right to counsel was properly waived."

{¶42} *Brooke* was modified in *State v. Thompson*, 121 Ohio St.3d 250, 2009-Ohio-314, 903 N.E.2d 618. In *Thompson*, the defendant filed a pretrial motion to strike prior uncounseled convictions from the indictment, arguing that the state couldn't use the prior convictions "absent a showing * * *that he was either represented by counsel or executed a valid waiver of counsel in the prior cases * * *." The defendant failed to submit any affidavits, transcripts, testimony, or other evidence to support his motion, however, and the state responded with a memorandum contra including copies of the waiver-of-rights forms the defendant executed in the previous OVI convictions. The Ohio Supreme Court approved the trial court's decision to allow the priors to enhance the penalty in the felony case because the burden of demonstrating a constitutional infirmity rests with the defendant:

> [A] defendant cannot establish a prima facie showing as to "uncounseled" merely by establishing that he or she had been

convicted without representation. For one thing, it is beyond dispute that a person has a constitutional right to represent himself or herself; therefore, it is not possible to establish a constitutional infirmity merely by showing that a person did not have counsel. See Section 10, Article I, Ohio Constitution; *State v. Gibson*, [45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus]. Furthermore, in *State v. Brandon*, [45 Ohio St.3d 85, 543 N.E.2d 501 (1989), syllabus], we stated, "Where questions arise concerning a prior conviction, a reviewing court must presume all underlying proceedings were conducted in accordance with the rules of law and a defendant must introduce evidence to the contrary in order to establish a prima-facie showing of constitutional infirmity." **With respect to "uncounseled" pleas, we presume that the trial court in the prior convictions proceeded constitutionally until a defendant introduces evidence to the contrary.** Thus, we conclude that for purposes of penalty enhancement in later convictions under R.C. 4511.19, after the defendant presents a prima facie showing that the prior convictions were unconstitutional because the defendant had not been represented by counsel and had not validly waived the right to counsel and that the prior convictions had resulted in confinement, the burden shifts to the state to prove that the right to counsel was properly waived.

> *State v. Thompson*, 121 Ohio St.3d 250, 2009-Ohio-314, 903
> N.E.2d 618, ¶ 6 (emphasis added).

{¶43} There is no dispute in the instant case that appellant was not represented by counsel when he entered the pleas resulting in both the 2002 and 2006 convictions, but appellant challenges the validity of his waiver of the right to counsel. Specifically, appellant contends the waivers were insufficient because the misdemeanor trial courts did not advise him the convictions could enhance the penalty of a subsequent offense.

{¶44} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph two of the syllabus. Because the 2002 and 2006 convictions were for petty offenses, the waiver of his right to counsel was required to be made in open court and recorded but was not required to be in writing. Crim.R. 22; Crim.R. 44(C). The record before us contains a certified copy of appellant's executed waiver in the 2002 case as noted supra in the statement of facts. The certified record also includes a transcript of the proceedings at the arraignment and plea hearings in the 2002 and 2006 convictions. In both of those hearings, appellant effectively waived his right to counsel.

{¶45} The issue remains whether the misdemeanor trial courts were required to advise appellant that his convictions could enhance the penalty level of a subsequent offense. The United States Supreme Court has noted:

> As a general proposition, a sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source

from which it may come." *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct.589, 30 L.Ed.2d 592 (1972). "Traditionally, sentencing judges have considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant." *Wisconsin v. Mitchell,* 508 U.S. 476, 485, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993). One such important factor, as recognized by state recidivism statutes and the criminal history component of the [federal] Sentencing Guidelines, is a defendant's prior convictions. Sentencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior. We have upheld the constitutionality of considering such previous conduct in *Williams v. New York,* 337 U.S. 241, 69 S.Ct.1079, 93 L.Ed. 1337 (1949). * * *.

*Nichols v. U.S.,* 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994).

{¶46} The *Nichols* Court further declines to accept the defendant's assertion, similar to appellant's argument here, that due process requires any kind of "warning" to defendants entering a no-contest plea or upon conviction that the conviction might later be used for enhancement purposes upon commission of a future crime. *Id.*

{¶47} Our colleagues on the Fourth District Court of Appeals rejected an argument similar to Johnson's most succinctly, and we adopt their rationale:

There appears to be no duty in Ohio to inform a defendant pleading guilty of the possible enhancement of sentences resulting from future crimes, nor can this court see why there should be such a duty. A trial court judge should not be required to anticipate recidivist behavior by a defendant who enters a guilty plea in that court. To be sure, a defendant is entitled to be advised of the effect of his guilty plea so that it can be shown that the plea was knowingly and voluntarily made. But it begs the question to argue that a defendant who pleads guilty would not be aware that if he gets convicted of the same offense again it is going to go harder on him the second time around.

*State v. Johnson*, 5th Dist. Stark No. 2011-CA-237, 2012-Ohio-3227, ¶ 38-40, citing *State v. Southers,* 4th Dist. No. 88CA10, 1988 WL 125024 (Nov. 23, 1988); *see also*, *State v. Wynn*, 5th Dist. Stark No. 2011CA00244, 2012-Ohio-3430, ¶ 28; *State v. Anderson*, 5th Dist. Stark No. 2011CA00226, 2012-Ohio-4476, ¶ 55.

{¶48} We find it was not necessary for the trial courts in the 2002 and 2006 convictions to warn appellant that his convictions could enhance subsequent offenses, thereby rendering his waiver of counsel invalid.

{¶49} The trial court in the instant case therefore did not err in permitting the 2002 and 2006 convictions to enhance the penalty to a felony of the fifth degree. See, *State v. Lewis*, 11th Dist. Lake No. 2009-L-138, 2010-Ohio-4288, ¶ 44 ["Applying the foregoing to the case sub judice, we note that there was no duty for the trial court to inform appellant

before accepting his plea that the plea could be used to enhance any subsequent offenses. Thus, the trial court did not err by allowing the state to use appellant's prior convictions for the purpose of enhancement."]; *State v. Porter*, 49 Ohio App.2d 227, 230, 369 N.E.2d 759 (1976). ["Convictions resulting from guilty pleas made by a defendant who is not informed that subsequent similar criminal conduct will subject him to additional criminal liability under a repeat offender statute are neither void nor voidable. Such convictions are properly alleged in an indictment of the defendant for subsequent criminal acts."]; *State v. Southers*, 4th Dist. Pickaway No. 88 CA 10, 1988 WL 125024, *2 [There appears to be no duty in Ohio to inform a defendant pleading guilty of the possible enhancement of sentences resulting from future crimes, nor can this court see why there should be such a duty. A trial court judge should not be required to anticipate recidivist behavior by a defendant who enters a guilty plea in that court. To be sure, a defendant is entitled to be advised of the effect of his guilty plea so that it can be shown that the plea was knowingly and voluntarily made. But it begs the question to argue that a defendant who pleads guilty would not be aware that if he gets convicted of the same offense again it is going to go harder on him the second time around.]; *State v. Firestone*, 4th Dist. Vinton No. 00CA542, 2001-Ohio-2506 (Mar. 28, 2001) [Crim.R. 11 does not require the court to inform appellant of the potential penalties of future crime].

{¶50} Appellant's third assignment of error is overruled.

*The trial court did not err in finding appellant was the subject of the 2002 and 2006 convictions*

{¶51} Next, appellant argues the trial court erred in identifying him as the subject of the 2002 and 2006 convictions. We note there is no evidence in the record that appellant was not the subject of those convictions; in fact, appellant submitted an affidavit

in support of his uncounseled-plea argument stating that he "did not recall" whether he was advised properly of his right to counsel. Appellant argues that affidavit should not be used as an admission that he was the subject of those convictions, but he can't have it both ways: he was inadequately advised of his right to counsel or it wasn't him, not both.

{¶52} We further note the face of the 2006 complaint cites the 2002 conviction, and the trial court discussed the 2002 conviction with appellant at his 2006 arraignment/plea. Appellant's underlying premises that he is not the subject of the 2002 and 2006 convictions, and that he was unaware of the effect of prior convictions to enhance subsequent offenses, are inconsistent with the entire record before us.

{¶53} In short there is no credible argument to be made at this stage of the proceedings that appellant is not in fact the subject of the 2002 and 2006 convictions. Appellant does raise this argument, however, but this is the rare case in which appellee produced audio and visual tape of the arraignment/plea hearings of the underlying municipal court proceedings. The trial court, as finder of fact, was permitted to review that evidence and compare the appellant before him and determine whether appellant was the subject of the prior convictions. The trial court reviewed the evidence and concluded appellant was the same defendant. T. 10/15/19, 98-99. The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

{¶54} Appellant's third assignment of error is overruled.

*Appellant's conviction is supported by sufficient evidence*

{¶55} Finally, appellant reiterates his prior arguments in his fourth assignment of error, arguing his conviction of public indecency as a felony of the fifth degree is not supported by sufficient evidence.

{¶56} As noted supra, appellee was required to prove appellant "recklessly * * * under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household, engaged in conduct that to an ordinary observer would appear to be sexual conduct or masturbation." R.C. 2907.09(A)(3). Further, pursuant to R.C. 2907.09(C)(3), "* * * [i]lf the offender previously has been convicted of or pleaded guilty to two or more violations of this section, a violation of division (A)(2) or (3) of this section is a misdemeanor of the first degree or, if any person who was likely to view and be affronted by the offender's conduct was a minor, a felony of the fifth degree." The factors listed in subsection (C) are enhancing elements which must be proven beyond a reasonable doubt. *State v. Downs*, 7th Dist. No. 15 MA 0170, 2017-Ohio-1014, 86 N.E.3d 787, ¶ 23. R.C. 2945.75 specifically indicates factors that enhance the degree of the offense are "elements." *State v. Russell*, 12th Dist. Butler No. CA2012-03-066, 2013-Ohio-1381, ¶ 12, citing *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, ¶ 8.

{¶57} The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed,

would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶58} In light of our rejection of appellant's three assignments of error, we find appellant's conviction upon one count of public indecency as a felony of the fifth degree is supported by sufficient evidence. The stipulated facts of the instant case, in addition to the evidence of the 2002 and 2006 convictions, establish appellant's guilt beyond a reasonable doubt. Appellant's fourth assignment of error is therefore overruled.

## CONCLUSION

{¶59} Appellant's four assignments of error are overruled and the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Baldwin, J. and

Wise, Earle, J., concur.